[Nos. 13898-4-III; Division Three. October 24, 1995.]
13909-3-III.

THE STATE OF WASHINGTON, *Respondent*, v.
JOHN LEONARD CALVERT, *Appellant*.

570

*Paul J. Wasson II*, for appellant.

*John G. Wetle, Prosecuting Attorney*, and *David M. Soukup, Deputy*, for respondent.

SCHULTHEIS, J. — John Calvert pleaded guilty to one count of residential burglary and five counts of forgery. He contends on appeal that the pleas were not made voluntarily because he suffered a concussion when hit on the head with a baseball bat nine days earlier. The State cross-appeals the calculation of Mr. Calvert's offender score and the imposition of an exceptional sentence downward. We affirm.

Sometime in April 1993, Mr. Calvert's ex-wife, Kennie, stole a checkbook from her mother's home and began forging checks on it. In about a week's time, Mr. Calvert deposited several of these checks in an account he owned jointly with his eleven-year-old son. On May 21, 1993, Mr. Calvert stole a car in Spokane and on May 27 he entered his former mother-in-law's house without permission and stole firearms. Eventually he was charged by information with first-degree burglary with a deadly weapon enhancement (RCW 9A.52.020(1); 9.94A.125; 9.94A.310(3)(b); 9A.08.020(2)(c), (3)), taking a motor vehicle without permission (RCW 9A.56.070(1)), and six counts of forgery (RCW 9A.60.020(1); 9A.08.020(2)(c), (3)).

After negotiations with Mr. Calvert, the State moved to amend the charges to one count of residential burglary (RCW 9A.52.025(1)) and five counts of forgery. The first-degree burglary and motor theft charges were dropped, the State agreed not to charge him with possession of marijuana, and Mr. Calvert agreed to plead guilty to the

amended charges. He signed the plea statement on August 27, 1993. Nine days earlier, he had been attacked during a drunken brawl, struck with a baseball bat and treated for bruises in an emergency room for about three hours.

Pursuant to the plea bargain, the State agreed to recommend a sentence of fifty-seven months, based on an offender score of seven for the residential burglary and counting two prior felony convictions. (The State agreed to recommend eighteen months for the forgery counts, to run concurrently with the residential burglary sentence.) At the hearing on the guilty plea, the judge read Mr. Calvert his rights, asked him if he understood that he agreed to give up those rights and asked him how he pleaded as to each charge. He then asked Mr. Calvert to tell in his own words what he did on the days he committed the crimes. The judge accepted his guilty plea and set a date for the sentencing hearing.

On September 27, 1993, Mr. Calvert moved to withdraw his guilty plea. His attorney submitted an affidavit and hospital records (not contained in the record on appeal) to support his contention that the head injuries from the baseball bat rendered his client incompetent to voluntarily enter a plea of guilty. Mr. Calvert was admitted to Eastern State Hospital on October 15 for a fifteen-day observation. Staff Psychiatrist George Wang determined at the close of the observation period that there was nothing to substantiate Mr. Calvert's claim of head injury or his incompetence to plead guilty.

At the hearing on the motion to withdraw the guilty plea on January 21, 1994, the defense submitted the telephonic testimony of psychiatrist John Moulton, who concluded that Mr. Calvert more probably than not sustained a concussion nine days before he pleaded guilty. Dr. Moulton's diagnosis relied heavily on the eyewitness accounts of three cell mates, who described Mr. Calvert as distracted, occasionally unaware of his surroundings, and suffering from serious injuries, including a broken arm and broken ribs. Dr. Wang testified and noted the letters

from Mr. Calvert's cell mates contained inconsistencies which made him doubt their truthfulness. He also testified that Mr. Calvert had told him he pleaded guilty because the prosecutor agreed to drop some charges. Based on his observation of Mr. Calvert's demeanor during the taking of the plea and on Dr. Wang's opinion, the trial judge denied the motion to withdraw the guilty plea.

The sentencing hearing was held February 18, 1994. The judge had asked the parties to address whether any two or more of the forgeries constituted the "same criminal conduct" and could be counted as one crime pursuant to RCW 9.94A.400(1)(a).[1] Both parties agreed that two of the checks were presented to the bank on the same day, although the State argued they could not have been forged or deposited at the same moment. The court found that these two checks should be counted as one forgery and computed Mr. Calvert's offender score as six, including the four other concurrent crimes and two previous felony drug convictions.

The court then found "substantial and compelling reasons" that the presumptive range was excessive, including: (1) although Mr. Calvert played an active role in the forgeries, his ex-wife was the principal; (2) a forger should not be sentenced the same as a violent offender; (3) although the bank was the ultimate victim, this was basically an offense against family members, not necessitating long-term incarceration to protect the public; and (4) all the forgeries were part of "one incident." Treating the forgeries as one offense, the court reached a standard range of fifteen to twenty months and imposed seventeen

---

[1]RCW 9.94A.400(1)(a) provides, in part: "That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. . . . 'Same criminal conduct,' as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim."

months.[2] The State objected to computation of the offender score and to the imposition of an exceptional sentence downward.

Mr. Calvert's appeal of the denial of his motion to withdraw the guilty plea (cause 13898-4-III) was consolidated with the State's cross appeal of the exceptional sentence (cause 13909-3-III) for review.

## A. Voluntary Guilty Plea

Mr. Calvert contends his plea of guilty was not entered into voluntarily because his head injury rendered him incompetent. He argues he suffered a concussion due to blows from a baseball bat only nine days before the guilty plea and this, combined with the testimony of his cell mates and Dr. Moulton, establish he was not competent to understand his constitutional rights or to voluntarily waive those rights.

■ The trial court must allow a defendant to withdraw a guilty plea if withdrawal is necessary to correct a "manifest injustice," i.e., an injustice that is obvious and observable. CrR 4.2(f); *State v. Weaver*, 46 Wn. App. 35, 40, 729 P.2d 64 (1986), *review denied*, 107 Wn.2d 1031 (1987). Because of the many safeguards surrounding a plea of guilty, the manifest injustice standard is a demanding one. *Weaver*, 46 Wn. App. at 41; *State v. Hystad*, 36 Wn. App. 42, 45, 671 P.2d 793 (1983). We find no manifest injustice here.

■■ The trial court is vested with broad discretion in judging a defendant's mental capacity to make a plea of guilty. *State v. Osborne*, 102 Wn.2d 87, 98, 684 P.2d 683 (1984). Its determination is made from such considerations as the defendant's demeanor, conduct, personal history,

---

[2]Apparently the court was using the standard range for residential burglary (Level IV) with an offender score of four. RCW 9.94A.310(1). It is unclear how the court reached this score. Counting the forgeries as one offense and adding the two previous felony offenses, the score would be three. RCW 9.94A.360. The sentence range for a score of three is thirteen to seventeen months, however, so the court's imposition of seventeen months would still fall into that range.

past history, medical and psychiatric reports, and the statements of counsel. *Osborne*, 102 Wn.2d at 98. An expert's testimony is not, however, binding on the trial court. *Osborne*, 102 Wn.2d 87. In the case of an allegation of incompetency, the standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), *quoted in Osborne*, 102 Wn.2d at 98.

Here, the facts support the trial court's decision to accept Mr. Calvert's guilty plea. The emergency room report at the time of his baseball bat injuries does not mention head injuries beyond bruising on his face and neck. The psychiatrists who read this report disagreed whether it indicated he sustained a concussion. Even with a concussion, as his own expert stated, he may or may not have been competent at the time he pleaded guilty. By his own admission, he decided to plead guilty because the prosecutor agreed to drop some charges. Further, the testimony of his cell mates sometimes was inconsistent with the facts: one even remembered a cast on Mr. Calvert's arm and broken ribs, none of which can be accounted for in the medical records.

██ ██ More importantly, the court engaged in a long colloquy with Mr. Calvert and allowed him to put his crimes and his desire to plead guilty in his own words. As the court specifically stated, Mr. Calvert was articulate and responded normally to all questions. The mere possibility that a head injury may have rendered him incompetent to understand a plea of guilty, without external indications of mental impairment at the time the plea was entered, is insufficient to show manifest injustice. *See Osborne*, 102 Wn.2d at 98 (the critical period for determining competency is the time of the entry of the guilty plea). The fact that the plea was made after consultation with defense counsel and reflects a reasonable defense tactic to meliorate multiple charges also support the finding that Mr. Calvert was competent to enter a

voluntary guilty plea. *Osborne*, 102 Wn.2d at 98; *Hystad*, 36 Wn. App. at 45.

## B. Offender Score

The State first argues in its cross appeal that the trial court incorrectly computed Mr. Calvert's offender score. The contention is that the court should not have counted two of the forgeries as one offense and that the court inexplicably left out one of the prior convictions in its computations. We find that the trial court was well within its authority to consider two of these crimes as one offense.

Whenever a defendant is sentenced for two or more current offenses, the trial court determines the sentence range for each offense by adding together all other current offenses and prior convictions. RCW 9.94A.400(1)(a); *State v. Vike*, 125 Wn.2d 407, 410, 885 P.2d 824 (1994). If, however, the court finds that all or some of the current offenses encompass "the same criminal conduct," then those offenses may be counted as one crime. RCW 9.94A.400(1)(a); *Vike*, 125 Wn.2d at 410. "Same criminal conduct" is defined by statute as "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.400(1)(a). If any one of these elements is missing, the offenses must be counted separately in calculating the offender score. *State v. Maxfield*, 125 Wn.2d 378, 402, 886 P.2d 123 (1994). The trial court's determination whether two crimes involve the same criminal conduct will not be disturbed on appeal unless there is a clear abuse of discretion or a misapplication of the law. *Maxfield*, 125 Wn.2d at 402; *State v. Flake*, 76 Wn. App. 174, 180, 883 P.2d 341 (1994).

The State first argues that none of the forgeries exhibit the same criminal intent because they did not further each other. This is not, however, the only test to be applied. As the Washington Supreme Court stated in *State v. Garza-Villarreal*, 123 Wn.2d 42, 46, 864 P.2d 1378 (1993)

(quoting *State v. Dunaway*, 109 Wn.2d 207, 743 P.2d 1237 (1987), 749 P.2d 160 (1988)), "trial courts should focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next." This analysis may include, but is not limited to, the extent to which one crime furthered the other, whether they were part of the same scheme or plan and whether the criminal objectives changed. *Maxfield*, 125 Wn.2d at 402-03; *State v. Lewis*, 115 Wn.2d 294, 302, 797 P.2d 1141 (1990). Although possession and presentation of one forged check did not "further" the possession or presentation of the other, both were deposited in Mr. Calvert's account on the same day, as part of the same scheme, with the same criminal objective: to defraud. RCW 9A.60.020(1)(b). The trial court reasonably presumed the checks were presented at the "same time and place," based on the fact that both checks were endorsed with the same address on the same date and "cleared" on the same date. RCW 9.94A.400(1)(a).

It is true that the trial court agreed to assign Mr. Calvert an offender score of six at the hearing. This figure was reached by adding the four other current offenses (one count of residential burglary and three counts of forgery, including the two forgeries counted as one) with two prior class C felonies. RCW 9.94A.360(1), (2), (3), (8); RCW 9.94A.400(1)(a). After the findings and conclusions were presented, the State noted the court failed to include one of the prior felonies in the findings and mistakenly assigned an offender score of five. The court agreed to these corrections, but they were never made. Even so, the court used the correct standard range for an offender score of six with a Level IV offense (residential burglary)—thirty-three to forty-three months. RCW 9.94A.310(1).

## C. Exceptional Sentence Downward

The State's final contention is that the reasons adopted by the sentencing court to justify the exceptional sentence are not supported by the record and are not sufficient as a matter of law. We find the court decided to impose an

exceptional sentence downward because (1) the forgeries were principally committed by Mr. Calvert's ex-wife; (2) the offenses were against family members, not strangers; (3) Mr. Calvert's present and past crimes were nonviolent; and (4) the cumulative effects of all the forgeries were minimal.

In order to reverse a sentence below the standard range, the appellate court must find either (1) that the sentencing judge's reasons are not supported by the record, (2) that those reasons do not justify a sentence below the standard range, or (3) that the sentence imposed is clearly too lenient. RCW 9.94A.210(4); *State v. Moore*, 73 Wn. App. 789, 794, 871 P.2d 642 (1994). Under the first prong, we determine whether the reasons are clearly erroneous in light of the record. *State v. Alexander*, 125 Wn.2d 717, 722-23, 888 P.2d 1169 (1995); *Moore*, 73 Wn. App. at 794. If the reasons are sufficiently supported, then under the second prong we examine whether the factual findings constitute "substantial and compelling" reasons for departing from the standard range as a matter of law. *Alexander*, 125 Wn.2d at 723; *Moore*, 73 Wn. App. at 794-95. If the exceptional sentence downward is justified under the first two prongs, we must then determine whether the sentencing court abused its discretion in imposing a sentence which was clearly too lenient, i.e., one that no reasonable person would have imposed. *Alexander*, 125 Wn.2d at 731; *Moore*, 73 Wn. App. at 795.

We find that all but one of the sentencing court's reasons for an exceptional sentence downward were insufficient as a matter of law, but that the final reason—the minimal differences between the crimes—is a compelling reason for departing from the standard range. Each of the sentencing court's reasons will be examined in turn.

1. Mrs. Calvert, Not Mr. Calvert, Was the Principal Forger. The crime of forgery is defined as either the making, completion or alteration of a written instrument or as the *possession or offer* of a written instrument with knowledge that it is forged. RCW 9A.60.020(1)(a), (b). A defen-

dant's secondary role in a crime may be only a mitigating factor in sentencing if the defendant's participation is "significantly out of the ordinary for the crime in question." *State v. Nelson*, 108 Wn.2d 491, 501, 740 P.2d 835 (1987); *Moore*, 73 Wn. App. at 798. Mr. Calvert held and deposited each of the five checks with knowledge that they were forged. He also admitted using the funds he illegally obtained through these checks. His involvement, far from appearing to be significantly out of the ordinary for the crime of forgery, is specifically prohibited by statute. Accordingly, this reason does not qualify as a mitigating factor.

2. The Offenses Were Primarily Against a Family Member. In its findings, the court stated that although the bank was the "ultimate" victim, this was basically an offense against family members. Mitigation of a sentence on the basis of the offender's relationship to the victim is appropriate only when the victim initiates or willingly participates in the crime. *See, e.g., State v. Clemens*, 78 Wn. App. 458, 898 P.2d 324 (1995) (victim's initiation of sexual intercourse and willing participation may be a mitigating factor in sentencing for rape of a child, based on RCW 9.94A.390(1)(a)). On the other hand, violation of a trust relationship may be an aggravating factor in sentencing. RCW 9.94A.390(2)(c)(iv); *State v. Russell*, 69 Wn. App. 237, 252, 848 P.2d 743, *review denied*, 122 Wn.2d 1003 (1993). The record shows that both the bank and Mr. Calvert's former mother-in-law were victims of these forgeries. Neither victim, however, initiated or willingly participated in the crimes. Accordingly, this reason does not qualify as a mitigating factor.

3. Mr. Calvert's Present and Past Convictions Were for Nonviolent Crimes. The State contends Mr. Calvert's 1978 California misdemeanor conviction for carrying a loaded firearm in a public place constitutes a violent crime. Mere *possession of a firearm in a public place is not a crime* in Washington and therefore does not constitute a violent offense pursuant to RCW 9.41.040 (unlawful possession of a

firearm by someone previously convicted of a violent offense) and RCW 9.94A.030(36) (definition of violent offense).

One of the purposes of the Sentencing Reform Act of 1981 (SRA) is to ensure punishment that is proportionate to the seriousness of the offense and the offender's criminal history. RCW 9.94A.010(1).[3] The purposes enumerated in RCW 9.94A.010 are not themselves mitigating factors, however, and may provide only support for an exceptional sentence once a mitigating circumstance has been identified by the trial court. *Alexander*, 125 Wn.2d at 730 n.22; *State v. Powers*, 78 Wn. App. 264, 270, 896 P.2d 754 (1995).

Here, the nonviolent nature of Mr. Calvert's past and present crimes does not qualify as a mitigating circumstance. The reasons for an exceptional sentence must not duplicate factors already considered in computing the standard range. *State v. Chadderton*, 119 Wn.2d 390, 395, 832 P.2d 481 (1992); *State v. Sanchez*, 69 Wn. App. 255, 259, 848 P.2d 208, *review denied*, 122 Wn.2d 1007 (1993). Criminal history is one of the components used to compute the presumptive range and may not be used as a mitigating factor. *State v. Freitag*, 127 Wn.2d 141, 144, 896 P.2d 1254 (1995). Further, the Legislature ranked the various crimes in the "seriousness score" on the basis of their comparative violence to society. RCW 9.94A.310. The fact that Mr. Calvert's prior and current offenses are not, by definition, violent may not be a mitigating factor.

4. The Effects of the Multiple Forgery Offenses Were Minimal. By this the court meant that possession and pre-

[3]The other purposes of the SRA include to:

"(2) Promote respect for the law by providing punishment which is just;

"(3) Be commensurate with the punishment imposed on others committing similar offenses;

"(4) Protect the public;

"(5) Offer the offender an opportunity to improve him or herself; and

"(6) Make frugal use of the state's resources." RCW 9.94A.010.

sentation of several forged checks worth $1,575 was "really no different" than possession and presentation of one forged check for that amount. The court noted at the sentencing hearing that the forgeries were all part of "one incident," apparently meaning one plan or scheme which took place over the span of several days.

A trial court may impose an exceptional sentence only if it finds, consistent with the purposes enumerated in RCW 9.94A.010, that there are substantial and compelling reasons justifying the exceptional sentence. RCW 9.94A.120(2); *State v. Ritchie*, 126 Wn.2d 388, 391, 894 P.2d 1308 (1995); *Alexander*, 125 Wn.2d at 722. RCW 9.94A.390(1)(g) authorizes an exceptional sentence downward when the multiple offense policy of RCW 9.94A.400 results in a sentence which is clearly excessive in light of the purposes of the SRA. Here, the trial court adopted the reasoning of *Sanchez* to impose an exceptional sentence based on the minimal cumulative effects of the multiple forgeries.

In *Sanchez*, the court imposed an exceptional sentence downward when police arranged three drug buys between the same buyer and seller within a short span of time, and each buy involved small amounts of drugs. The appellate court found that RCW 9.94A.390(1)(g) authorized an exceptional sentence downward when the difference between the effect of the first buy and the cumulative effects of all three buys was "nonexistent, trivial or trifling." *Sanchez*, 69 Wn. App. at 261. Although all the charges, which did not qualify as the same criminal conduct, had to be used to compute the offender score, the court in its discretion could grant the exceptional sentence because the standard range sentence was "clearly excessive" as a result of the multiple offense policy of RCW 9.94A.400. *Sanchez*, 69 Wn. App. at 262.

In both *Sanchez* and a recent case applying the *Sanchez* mitigating circumstances, *State v. Hortman*, 76 Wn. App. 454, 886 P.2d 234 (1994), *review denied*, 126 Wn.2d 1025 (1995), the appellate courts found that the

sentencing court's role was "to focus on the difference, if any, between the effects of the first controlled buy and the cumulative effects of subsequent controlled buys. Where that difference is nonexistent, trivial or trifling, there is a basis in law for an exceptional sentence downward." *Hortman*, 76 Wn. App. at 461; *Sanchez*, 69 Wn. App. at 261.

The court here focused its examination on the difference between the cumulative effects of writing several small checks worth a total of $1,575 and the effect of writing one large check for that amount. In essence, the court found that the whole should not be greater than the sum of its parts. Considering the close relationship in time, intent and scheme of the several forgeries, we find that the sentencing court was within the authority granted in RCW 9.94A.390(1)(g) when it found that the minimal cumulative effects of the crimes were substantial and compelling reasons for imposing an exceptional sentence. As we said in *State v. Fitch*, 78 Wn. App. 546, 897 P.2d 424 (1995), "none of the purposes of the SRA are served by the multiple offense policy of RCW 9.94A.400 if qualitative differences between the first criminal act and subsequent acts must be ignored." *Fitch*, 78 Wn. App. at 553.

Finally, the State argues that the sentencing court's imposition of a seventeen-month sentence was clearly too lenient. A sentence is deemed clearly too lenient only if the sentencing court abused its discretion in establishing the precise length of the sentence. *Alexander*, 125 Wn.2d at 731. The question is whether any reasonable person would impose a sentence of seventeen months for a crime with a standard range of thirty-three to forty-three months. *Alexander*, 125 Wn.2d at 732. The sentencing court treated the forgeries as one crime and added the two previous felonies when computing the exceptional sentence. Seventeen months is the high end of the range for an offender score of three. (*See* note 2, above.) Accordingly, an exceptional sentence of seventeen months here is not clearly too lenient.

In sum, we reject Mr. Calvert's argument that his guilty

plea was not made voluntarily. We also affirm the sentencing court's calculation of his offender score and its imposition of an exceptional sentence on the basis of the minimal cumulative effects of the several forgeries.

Affirmed.

SWEENEY, A.C.J., and MUNSON, J., concur.

Review denied at 129 Wn.2d 1005 (1996).