[No. 42331-2-I.   Division One.   August 23, 1999.]
THE STATE OF WASHINGTON, *Respondent*, v. DARRYL WILLIAM YOUNG, *Appellant*.

---

*Oliver Ross Davis* of *Washington Appellate Project*, for appellant.

*James H. Krider, Prosecuting Attorney*, and *Seth Aaron Fine* and *Charles Franklin Blackman, Deputies*, for respondent.

COLEMAN, J. — Darryl Young presented five photocopied checks to the Lynnwood Check-X-Change, a check-cashing outlet, on different days between June 13 and June 21, 1997. He received funds for four checks, but was arrested when he attempted to cash the fifth check. On appeal, Young argues that the fifth check could not have supported a charge of forgery because it was postdated. He also challenges the trial court's decision to count separately three of his 1987 convictions, three 1989 convictions, and four of the current convictions in calculating his offender score. We hold that because a postdated check creates legal liability, Young was properly charged with forgery for attempting to cash one. We also hold that the trial court did not err in counting his prior and current convictions separately, because they do not constitute the same criminal conduct. Therefore, we affirm the judgment and sentence entered below.

## FACTS

Darryl Young presented five photocopied checks to the

Lynnwood Check-X-Change on different days between June 13 and June 21, 1997. The first check he cashed was drawn on the account of W.J. Byrnes & Company for $1,110. To cash the check, Young produced his own identification and filled out a form as a new Check-X-Change customer. The Check-X-Change clerk also called the telephone number for W.J. Byrnes printed on the check to verify that the check was valid and called the bank to confirm that there were sufficient funds in the account.

Over the next four days, Young returned three more times with additional photocopies of the same W.J. Byrnes check. The checks were payable to Young in the amounts of $1,500, $1,300, and $1,500. Young presented identification when he cashed each check. But because he had previously cashed a Byrnes check at the outlet, the Check-X-Change did not call to verify that there were sufficient funds in the Byrnes account or that the later checks were valid.

The fifth check that Young attempted to cash was drawn on a different account. In addition, Young presented the check on a Saturday, and it was postdated for the following Monday.

Young was convicted on five counts of forgery. At sentencing, Young argued that three of his 1987 convictions, taking a motor vehicle without permission, possession of stolen property, and forgery, were the same criminal conduct and should count as one offense. Young next argued that his three 1989 convictions for forgery were the same criminal conduct and should count as one offense. Although the forgeries were committed on different days, Young argued that the crimes involved the "same victim, if you will, the same check, the same person, the same identification, okay, and it happened within the same time frame." Young finally argued that counts 2 through 5 encompassed the same criminal conduct because they were based on photocopies of the same check. The court rejected these arguments and counted the prior and current convictions separately.

The court sentenced Young to a term of 29 months on count 1 and imposed an exceptional sentence of 48 months

on counts 2 through 5, ordering all terms to run concurrently.

## DISCUSSION

On appeal, Young first argues that the trial court erred in denying his motion to dismiss count 1 because it was based on his presentation of a postdated check. The forged check was dated June 23, 1997, but was presented to the Check-X-Change on Saturday, June 21. At trial, Check-X-Change employees testified that on Saturdays their company will cash checks that are dated the following Monday. Young argues, however, that a postdated check is not a legal instrument for the purposes of the forgery statute.

■ ■ The crime of forgery requires an instrument which, if genuine, may have legal effect or be the foundation of legal liability. *State v. Smith*, 72 Wn. App. 237, 240-43, 864 P.2d 406 (1993) (discussing the rule of legal efficacy); *see State v. Scoby*, 117 Wn.2d 55, 57-58, 810 P.2d 1358, 815 P.2d 1362 (1991). Young argues that the postdated check did not meet this requirement "because the time for payment had not arrived and thus the check could not have created any liability on the part of any person at that time[.]" Br. of Appellant, at 9. He relies on RCW 62A.3-108, which provides that a promise or order may be payable at a fixed date. The statute does not, however, state that a postdated check is not negotiable. In fact, RCW 62A.3-113 provides that an instrument "may be antedated or postdated."[1] And under RCW 62A.4-401(c), unless a customer has notified the bank of his or her postdated check under the procedures described in the statute, the bank can pay the check before the date on the check and charge the customer's account. The UNIFORM COMMERCIAL CODE comments explain that this provision was added because the automated check collection system cannot ac-

---

[1] The statute also provides that a demand instrument is not payable before the date of the instrument except as provided in RCW 62A.4-401(c), discussed above.

commodate postdated checks, and that "[a] check is usually paid upon presentment without respect to the date of the check."[2] U.C.C. § 4-401 cmt. 3 (1995). Because RCW 62A.3-113 and RCW 62A.4-401(c) indicate that a postdated check can create legal liability, we conclude that the forgery charge in count I was proper.

■ Young next contends that the court erred by counting separately four of his current convictions, his 1989 forgery convictions, and three of his 1987 convictions. Multiple crimes that constitute the same criminal conduct are counted as one offense for the purpose of determining the defendant's criminal history at sentencing.[3] RCW 9.94A.360(5)(a)(i), RCW 9.94A.400(1)(a). Crimes encompass the same criminal conduct for sentencing purposes if they involve the same criminal intent and were committed against the same victim at the same time and place. RCW 9.94A.400(1)(a); *State v. Deharo*, 136 Wn.2d 856, 858, 966 P.2d 1269 (1998).

■ The State argues that the current forgeries charged in counts 2 through 5 do not constitute the same criminal conduct because they were committed on separate days. Our courts have held that separate incidents may satisfy the same time element of the test when they occur as part of a continuous transaction or in a single, uninterrupted criminal episode over a short period of time. *See, e.g., State v. Porter*, 133 Wn.2d 177, 183, 942 P.2d 974 (1997). In *State v. Calvert*, 79 Wn. App. 569, 903 P.2d 1003 (1995), the defendant deposited several forged checks into a joint account over a one-week period and was charged with five counts of forgery. In reviewing the defendant's sentence, Division

---

[2]The notes further explain: "Under the former law, if a payor bank paid a postdated check before its stated date, it could not charge the customer's account because the check was not 'properly payable.' Hence, the bank might have been liable for wrongfully dishonoring subsequent checks of the drawer that would have been paid had the postdated check not been prematurely paid. Under subsection (c) a customer wishing to postdate a check must notify the payor bank of its postdating in time to allow the bank to act on the customer's notice before the bank has to commit itself to pay the check." U.C.C. § 4-401 cmt. 3 (1995).

[3]Adult convictions served concurrently for crimes committed before July 1, 1986 are also counted as one offense. RCW 9.94A.360(5)(a)(ii).

Three affirmed the sentencing court's decision to consider as the same criminal conduct two of the five counts, which were based on checks that had been presented to the bank on the same day. *Calvert*, 79 Wn. App. at 578. Here, unlike the situations at issue in *Porter* and *Calvert*, all the crimes were committed on separate days and were not part of a single transaction or criminal episode.

Nevertheless, Young argues that because the checks were returned unpaid the week after he committed the crimes, the Check-X-Change incurred its loss at the same time. This argument does not dispose of the same time element of the test because only two of the checks were returned on the same day.[4] Moreover, the argument is incorrect. Check-X-Change incurred its loss when it gave Young cash in return for the forged checks, which were worthless. This occurred on separate days and constituted separate acts of forgery under the statute.

Young also argues that the current forgeries shared the same criminal intent. We disagree. At sentencing, Young argued that in each crime he had used photocopies of the same W.J. Byrnes check and that his intent to commit the crimes was formed when the original check was copied. But Young was charged and convicted of uttering, not making, forged instruments. *See* RCW 9A.60.020(1)(b). Thus, whether he photocopied the original W.J. Byrnes check, intending to fill the copies out and cash them later, is irrelevant. When Young cashed each copied check, he committed separate acts of forgery under the statute. Although the crimes shared the same objective, passing a forged check, each crime was separately realized. *See State v. Garza-Villarreal*, 123 Wn.2d 42, 48, 864 P.2d 1378 (1993) (discussing *State v. Lewis*, 115 Wn.2d 294, 797 P.2d 1141 (1990)). Our courts have held that successful transactions on different days may be counted as separate offenses even when, as here, they involved the same crime and the same

---

[4]A Check-X-Change manager testified that the bank returned two checks unpaid on June 23, one check on June 25, and one check on June 26.

victim and were committed at the same place. *See, e.g., Lewis*, 115 Wn.2d 294.

On appeal, Young also argues that his success in cashing the first check "facilitated his subsequent ability to cash all the remaining W.J. Byrnes checks" because the Check-X-Change's employees did not call the telephone number for Byrnes printed on the checks or call the bank to verify that the account had sufficient funds. Br. of Appellant, at 16. In a same criminal intent inquiry, we evaluate whether criminal intent, viewed objectively, changed from one crime to the next, including whether one crime furthered another. *See Garza-Villarreal*, 123 Wn.2d at 46-47 (discussing *State v. Dunaway*, 109 Wn.2d 207, 743 P.2d 1237 (1987)). But nothing in the record indicates that Young knew that Check-X-Change employees would not conduct the verification procedures or that the Byrnes account did not have sufficient funds for the later checks. There is also no indication that Young planned to present the four checks within a certain time period or knew when the checks would be returned unpaid. Thus, there is no factual basis for his assertion that the success of the subsequent transactions depended upon the first crime. In determining whether the same criminal intent element is satisfied, we do not analyze the defendant's subjective intent, but objectively evaluate criminal intent in light of the crimes committed and the facts presented at sentencing. *See State v. Lessley*, 118 Wn.2d 773, 778, 827 P.2d 996 (1992). Here, Young committed separate forgeries on separate days at the same check-cashing outlet, thereby harming the same victim. Viewed objectively, the intent behind each crime was to pass the particular forged check in order to receive an amount of money from the victim. We conclude that the court did not abuse its discretion by counting these offenses separately.

Young next contends that the trial court erred by failing to evaluate his prior convictions under a same criminal

conduct analysis.[5] Young contends that the sentencing court mistakenly believed that application of the analysis to a defendant's prior convictions is discretionary. At the sentencing hearing, Young had argued: "Of course the defen[s]e contention is that [the 1987 convictions] should all count as one." When the court later interjected, "You mean may be counted as one in the Court's discretion?," Young answered, "Yes, sir."

■ The record of the hearing indicates that the sentencing court considered and rejected same criminal conduct arguments with respect to both sets of prior convictions. Noting that Young had made a same criminal conduct argument with respect to both the 1987 and 1989 convictions, the court stated, "I am not particularly persuaded that the Court should exercise its discretion under these circumstances, to reduce the score of [the 1987 convictions] from three to one." We conclude that the court's comments do not reflect an error in its understanding of the analysis, but merely recognize that a same criminal conduct finding is a discretionary determination. *See, e.g., Porter,* 133 Wn.2d at 181 (appellate court reviews a same criminal conduct determination for clear abuse of discretion or misapplication of the law). We find that the trial court properly applied the analysis with respect to both sets of prior convictions and review the calculation of Young's offender score for abuse of discretion.

At sentencing, Young argued that his 1989 convictions were committed with photocopies of the same check and involved the same victim. But as in the current case, the checks were cashed on different days. The circumstances of the crimes are similar to the current offenses, and we conclude that the sentencing court also did not abuse its discretion in counting these offenses separately.

Young also argued that his 1987 convictions for taking a

---

[5]In the briefing, the State argued that any error in the trial court's analysis was invited. But at oral argument, the State conceded that the argument is not appropriate in this context. Thus, we do not address the application of the invited error doctrine here.

motor vehicle without permission, second degree possession of stolen property, and forgery constituted the same criminal conduct because they occurred on the same day and involved the same victim:[6]

> I was in a car that didn't belong to me. There was a wallet in the car and there were checks in the car. The checks were found on me and a check—one check was made out. So when I was arrested, I got arrested for possession of a stolen automobile, possession of the property that was inside the automobile, a wallet, if you will, with credit cards and stuff, and possession of the checkbook [that] was in the car too, and I had a check filled out and I got a forgery charge behind that too, your Honor.

■ But from this description, there is no indication that the crimes involved the same criminal intent. Although the three crimes may have occurred nearly simultaneously, they were not "intimately related." *See State v. Miller*, 92 Wn. App. 693, 708, 964 P.2d 1196 (1998), *review denied*, 137 Wn.2d 1023 (1999). None of the crimes depended on the commission of the others. Young's testimony does not indicate that he took the car and took possession of the property inside in order to commit forgery. Moreover, Young could have taken the wallet and credit cards without driving away in the vehicle and could have committed either crime without committing forgery. We conclude that the court did not err in counting these offenses separately. For the reasons discussed above, we affirm the judgment and sentence entered below.

AGID, A.C.J., and WEBSTER, J., concur.

---

[6]Contrary to the State's assertions, Young claimed that the 1987 convictions at issue involved the same victim.