[Nos. 38156-7-II; 38376-4-II.   Division Two.   September 21, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS W. DECLUE, *Appellant*.

---

788

*Peter B. Tiller* (of *The Tiller Law Firm*), for appellant.

*Susan I. Baur, Prosecuting Attorney*, and *James Smith, Deputy*, for respondent.

¶1 ARMSTRONG, J. — Thomas DeClue pleaded guilty to second degree manslaughter and first degree unlawful possession of a firearm. He later moved to withdraw the plea, claiming that he was incompetent when he pleaded guilty due to numerous prescription medications he was taking at that time. The trial court denied the motion and DeClue appeals, arguing (1) the trial court erred by denying the motion without first holding a formal competency hearing under RCW 10.77.060 and (2) his counsel ineffectively represented him by failing to investigate whether his medications rendered him incompetent to enter the plea. Finding no reversible error, we affirm.

## FACTS

¶2 On July 1, 2006, DeClue shot and killed Richard Shelburg. The State charged DeClue with first degree murder and first degree unlawful possession of a firearm

but amended the information to second degree manslaughter and first degree unlawful possession of a firearm as part of a plea agreement. The trial court accepted DeClue's *Alford* plea[1] and sentenced him to an exceptional sentence of 120 months. In March 2008, DeClue moved to withdraw his guilty plea, contending that he was under the influence of multiple medications while incarcerated in the Cowlitz County Jail and, consequently, was unable to knowingly, voluntarily, and intelligently waive his constitutional rights.[2] The trial court ruled that DeClue's motion and affidavit "reaches the standards such that an evidentiary hearing is . . . required." Report of Proceedings (RP) (May 8, 2008) at 12.

¶3 At the evidentiary hearing, a nurse from the Cowlitz County Jail, Sally Andrew, testified that DeClue took several different medications at different times throughout his time in the jail, including Vicodin, a narcotic pain reliever; Tramadol, a nonnarcotic pain reliever; BuSpar, an anti-anxiety medication; Seroquel, an antipsychotic medication; Skelaxin and Robaxin, muscle relaxers; and Sudafed, a nasal decongestant. Andrew testified that Vicodin, BuSpar, Skelaxin, and Seroquel cause drowsiness and sleepiness. She also testified that DeClue never appeared to be intoxicated or impaired by the medications.

¶4 DeClue testified that the medications made him feel "like a zombie" and impaired his ability to process information. RP (June 26, 2008) at 17, 21. He stated that when he entered his plea, he did not fully understand the consequences of his decision. Bonita Worden, DeClue's niece, testified that she visited her uncle weekly at the jail and he "seemed tired all the time, in a daze," and would forget what

---

[1] A guilty plea entered by a defendant in connection with a plea bargain, without actually admitting guilt. *N. Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] This was DeClue's second motion to withdraw his guilty plea. In 2007, DeClue filed a motion to withdraw on the grounds that the State breached the plea agreement. We affirmed the trial court's denial of his motion but remanded for clarification of DeClue's sentence. *See State v. DeClue*, noted at 149 Wn. App. 1017, 2009 WL 597276, 2009 Wash. App. LEXIS 566.

he was saying mid-sentence. RP (June 26, 2008) at 72-73. Kevin Robinson, an inmate at the jail, testified that DeClue had difficulty concentrating on activities like reading and card games and would lose his train of thought in the middle of conversations. Taylor Conley, another inmate, testified that DeClue was drowsy and lethargic when on medication, spent a lot of time sleeping, and had a very short attention span.

¶5 James Morgan, DeClue's attorney at his plea hearing, testified that he was aware DeClue was experiencing problems with pain management and depression but DeClue never appeared incompetent to him. According to Morgan, "[DeClue] was always very sharp. I mean, he was astute. He was paying very close attention to his case. He was a fairly intelligent individual who I had no problems communicating [with]." RP (June 26, 2008) at 39. Morgan also testified that he and DeClue extensively discussed the pros and cons of his case and that DeClue participated in formulating the terms of the plea agreement that the State ultimately accepted.

¶6 The trial court denied DeClue's motion to withdraw his plea, ruling that it did not find anything in the record or the evidence offered by DeClue to support his assertion that he was incompetent when he pleaded guilty. The trial judge had reviewed a videotape of the plea hearing and clearly remembered the plea colloquy with DeClue. The judge found that DeClue appeared to be lucid at that time and did not appear to be affected by the medications he was taking. The judge also relied on Andrew's testimony that DeClue never seemed incapacitated by the medications, and Morgan's testimony that DeClue was very involved in his case and helped formulate the terms of the plea agreement.

## ANALYSIS

### COMPETENCY HEARING

¶7 We will reverse a trial court's ruling on a motion to withdraw a guilty plea only for an abuse of discretion.

*State v. Marshall*, 144 Wn.2d 266, 280, 27 P.3d 192 (2001). A trial court must allow a defendant to withdraw a guilty plea "whenever it appears that the withdrawal is necessary to correct a manifest injustice." CrR 4.2(f); *Marshall*, 144 Wn.2d at 280-81. A manifest injustice exists where (1) the plea was not ratified by the defendant, (2) the plea was not voluntary, (3) counsel was ineffective, or (4) the plea agreement was not kept. *Marshall*, 144 Wn.2d at 281. The injustice must be "obvious, directly observable, overt, [and] not obscure." *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974). The defendant's burden when seeking to withdraw a plea is demanding because ample safeguards exist to protect the defendant's rights before the trial court accepts the plea. *Taylor*, 83 Wn.2d at 596-97.

¶8 A defendant's claim that he lacked competence to plead guilty is equivalent to claiming the plea was not voluntary. *Marshall*, 144 Wn.2d at 281. A person is "incompetent" if he "lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect." RCW 10.77.010(15). A formal competency hearing under RCW 10.77.060 is required "whenever a legitimate question of competency arises." *Marshall*, 144 Wn.2d at 279. These procedures are mandatory, not merely directory. *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 863, 16 P.3d 610 (2001).

¶9 If a defendant supports his motion to withdraw a guilty plea with substantial evidence of incompetency, the trial court must either grant the motion or hold a formal competency hearing under RCW 10.77.060. *See Marshall*, 144 Wn.2d at 281. In *Marshall*, 144 Wn.2d at 270-73, the defendant moved to withdraw his guilty plea, presenting undisputed testimony from a neurologist, a neuropsychologist, and a psychiatrist that he suffered from brain damage, bipolar mood disorder, and paranoid schizophrenia. Furthermore, one doctor concluded that the defendant was delusional and suffering from psychotic depression when he pleaded guilty. *Marshall*, 144 Wn.2d at 271-72.

Despite acknowledging that the defendant clearly suffered from brain damage, the trial court ruled that the defendant did not exhibit any signs of incompetency during the plea hearing and denied the motion. *Marshall*, 144 Wn.2d at 280. Our Supreme Court reversed, holding:

> Here, despite substantial evidence calling Marshall's competency into question, the trial court denied the motion to withdraw the guilty plea absent the mandatory competency hearing required by RCW 10.77.060. We hold that where a defendant moves to withdraw [a] guilty plea with evidence the defendant was incompetent when the plea was made, the trial court must either grant the motion to withdraw [the] guilty plea or convene a formal competency hearing required by RCW 10.77.060.

*Marshall*, 144 Wn.2d at 281.

¶10 In contrast, when an incompetency claim is not supported by substantial evidence, the defendant has not demonstrated a manifest injustice and the trial court may deny the motion without holding a formal competency hearing. *See State v. Calvert*, 79 Wn. App. 569, 576, 903 P.2d 1003 (1995) (rejecting a defendant's incompetency claim based on a head injury sustained nine days prior to the plea hearing where neither the defendant's medical records nor the doctor's testimony supported the defendant's claim that he was incompetent when he pleaded guilty); *State v. Hystad*, 36 Wn. App. 42, 45, 671 P.2d 793 (1983) (rejecting defendant's unsupported incompetency claim because "defendant's bald claim of methadone-induced confusion does not meet the demanding standard required to show manifest injustice"); *State v. Armstead*, 13 Wn. App. 59, 63-65, 533 P.2d 147 (1975) (rejecting a defendant's unsupported claim that he was " 'drunk off barbiturates' " when he pleaded guilty).

¶11 DeClue argues that, similar to *Marshall*, he presented substantial evidence of incompetency and the trial court erred by holding an evidentiary hearing instead of a formal competency hearing under RCW 10.77.060. He asks

us to vacate his plea and remand for a formal competency hearing.

¶12 We first consider whether the trial court erred by holding an evidentiary hearing instead of a formal competency hearing. DeClue's motion to withdraw his guilty plea was supported by only an affidavit asserting that the numerous medications he was taking at the time of the plea interfered with his ability to understand and assess the consequences of pleading guilty. The trial judge initially ruled that the motion "reaches the standards such that an evidentiary hearing is . . . required" but later clarified her reasons for holding the hearing. RP (May 8, 2008) at 12. The judge explained during her oral ruling following the evidentiary hearing:

> I took the extra step. I knew what the videotape looked like from the plea. I recalled taking the plea from Mr. DeClue. I didn't need to hold this hearing, necessarily. I remembered what he looked like, but his Affidavit raised an issue that I hadn't heard before. I wasn't aware, at the time of the taking of the plea, that Mr. DeClue was taking medications. And I felt like I really needed to know what those were and what effect it had.

RP (June 26, 2008) at 126.

¶13 A formal competency hearing is required "whenever a legitimate question of competency arises." *Marshall*, 144 Wn.2d at 279. A legitimate question of competency arises when a defendant moves to withdraw a guilty plea and supports the motion with "substantial evidence" of incompetency. *See Marshall*, 144 Wn.2d at 281. In this case, the trial judge's explanation demonstrates that she held an evidentiary hearing to learn about the possible effects of DeClue's medications, not because he had presented substantial evidence of incompetency. In other words, the trial judge held the hearing to review the evidence supporting DeClue's motion and determine whether a "legitimate question of competency" existed. *Marshall*, 144 Wn.2d at 279. Because the judge had not yet found substantial evidence

calling DeClue's competency into question, she was not required to hold a formal competency hearing at that point.

¶14 We next consider whether DeClue presented substantial evidence of incompetency at the evidentiary hearing, thereby requiring the trial court to either convene a formal competency evaluation or grant his motion. As previously discussed, a defendant's burden when seeking to withdraw a plea is demanding because ample safeguards exist to protect his rights before the trial court accepts the plea. *Taylor*, 83 Wn.2d at 596-97. The defendant must demonstrate that the "manifest injustice" warranting withdrawal was "obvious, directly observable, overt, [and] not obscure." *Taylor*, 83 Wn.2d at 596.

¶15 DeClue must demonstrate that he was incompetent when he pleaded guilty because his medications interfered with his "capacity to understand the nature of the proceedings against him . . . or to assist in his . . . defense. . . ." RCW 10.77.010(15). After reviewing all of the evidence, the trial court ruled that nothing in the record supported DeClue's assertion that he was incompetent when he pleaded guilty. The trial judge relied on her own recollection of the plea hearing, a nurse's testimony that DeClue never appeared intoxicated or incapacitated by the medication, and defense counsel's testimony that DeClue never had any problems communicating, appeared to be "sharp" and "astute," was paying "very close attention to his case," and participated in plea negotiations. RP (June 26, 2008) at 122-26. Although DeClue, his niece, and several inmates testified to DeClue's claimed impairment, the trial court did not find that testimony persuasive—a credibility determination that we cannot review on appeal. *See State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

¶16 DeClue likens his case to *Marshall*. In *Marshall*, the defendant produced undisputed evidence of brain damage and mood disorders, a doctor concluded that his impairment rendered him incompetent when he pleaded guilty, and the trial court accepted that the defendant suffered from brain damage. *Marshall*, 144 Wn.2d at 269-73, 280. In contrast,

DeClue presented no credible evidence that the medications affected his ability to understand the consequences of pleading guilty. Accordingly, he did not demonstrate a manifest injustice and the trial court did not abuse its discretion by denying his motion to withdraw his guilty plea.

¶17 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HUNT and QUINN-BRINTNALL, JJ., concur.