IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30809-0-III |
| | ) | consolidated with 30810-3-III; |
| Respondent, | ) | 30811-1-III |
| | ) | |
| v. | ) | |
| | ) | |
| UNTERS L. LOVE, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, C.J. — Mr. Unters Love challenges his conviction for six counts of second degree theft and one count of bail jumping on the basis that the court erred in considering his challenges for cause at sidebar during jury selection. He also argues that he should have been present at the sidebar conference and that a postdated check that was cancelled before it came due had no value under our theft statute. We conclude that the court did not close the courtroom, Mr. Love has not shown that his due process claim was manifest, and that the check did have value at the time it was acquired. Accordingly, we affirm the convictions.

No. 30809-0-III consolidated with; 30810-3-III;
30811-1-III
*State v. Love*

## FACTS

The noted charges were filed in three different cause numbers, but all of the matters proceeded to a single jury trial. Mr. Love was represented by counsel, although their relationship appeared on the record to be strained on occasion.

At the conclusion of voir dire, the trial judge called the attorneys forward for a bench conference to discuss challenges for cause; the record does not reflect whether Mr. Love joined the conference. Defense counsel challenged jurors 15 and 30 for cause; the prosecutor had no objection and the court struck the two jurors for cause. Counsel also discussed three other jurors, but no challenges were raised to those jurors after it appeared they were too far down the list to end up serving on the panel. Counsel also both assented to the trial judge's suggestion that two alternates be used. The court reporter then noted that the bench conference concluded.

At that point, the transcript reads: "(Peremptory challenge process is being conducted.)" The judge explained to the jurors that this process "generally takes a couple minutes, so if you want to stand and stretch, talk quietly amongst yourselves, feel free." Report of Proceedings (RP) at 134. The record of jurors shows that the prosecutor exercised one peremptory challenge. Defense counsel waived his peremptory challenges and the prosecutor waived further challenges. Both declined to strike any alternate

2

No. 30809-0-III consolidated with; 30810-3-III;
30811-1-III
*State v. Love*

jurors.[1]

After the judge's remarks inviting the jurors to relax, the transcript reports:

"(Peremptory challenges continuing.)" RP at 134. The next line of the report of

proceedings contains the beginning of the following exchange:

> THE DEFENDANT: Your Honor, may I—may I approach the bench?
> THE COURT: No.
> THE DEFENDANT: Please, may I approach the bench, your Honor?
> THE COURT: No.
> THE DEFENDANT: Mr. Knox cannot represent this case.
> THE COURT: Sir, if you say one more word. . . .
> (The defendant sat down.)

RP at 135.

The essence of the charges against Mr. Love was that he would advertise and sign

leases with people for residences that he did not own and collect their down payments for

himself. One of the counts at trial involved a victim, Ms. L. who gave him a postdated

check along with a $500 money order. She had second thoughts about the transaction

and cancelled the check before the date on the check; Mr. Love never presented the check

to the bank. Ms. L. never saw the money order again.

---

[1] Although not explained in the record, the handwriting on the record of jurors suggests that the prosecutor exercised the first peremptory strike by drawing a line through the name of the juror and putting a "P1" next to it. After that, the parties waived further challenges by so noting in writing on the form and then signing the document. They appear to have acted off of the written form, which likely was passed back and forth.

The jury convicted Mr. Love as charged. The court imposed a standard range

sentence term. Mr. Love then timely appealed to this court. After the decision in *State v.*

*Sublett*, 176 Wn.2d 58, 292 P.3d 715 (2012), the parties provided supplemental briefing

concerning that case at our direction.

## ANALYSIS

This appeal presents a public trial claim concerning challenges for cause occurring

at a sidebar conference and a due process claim arising from Mr. Love's absence from the

sidebar conference. Mr. Love also challenges the sufficiency of the evidence to support

the conviction for theft involving Ms. L. We will address the three challenges in the

noted order.[2]

*Public Trial*

Mr. Love contends that the court violated his Washington Constitution article I,

section 22 public trial rights by hearing his challenges for cause at sidebar. He also

contends that the court erroneously conducted the peremptory challenges at sidebar as

well. As to the latter claim, we do not believe the record factually supports the argument.

The transcript clearly showed that the sidebar conference ended at the conclusion of the

challenges for cause. The peremptory challenge process then began. The record simply

---

[2] Mr. Love also filed a pro se statement of additional grounds raising several
claims. All are without merit and most have no basis in the record of this case. We will
not further address them.

4

No. 30809-0-III consolidated with; 30810-3-III;
30811-1-III
*State v. Love*

does not suggest that the peremptory challenge process continued at sidebar after the

reporter stopped reporting it.[3] However, our analysis would not change even if the

peremptory challenges had also been taken at sidebar. There was no improper closure of

the courtroom.

Art. I, § 22 guarantees a criminal defendant many trial rights, including the right to

"a speedy public trial by an impartial jury." The meaning of the "public trial" right has

been heavily litigated the past several years. In an overly simplified form, it is error

under § 22 to "close" the courtroom to any aspect of a criminal trial that is required to be

"open." Whether or not a courtroom was properly closed is adjudged by application of

the five factor test set forth in *State v. Bone-Club*, 128 Wn.2d 254, 261, 906 P.2d 325

(1995). Whether or not a particular portion of a proceeding was required to be held in

public is determined by use of the "experience and logic" test. *Sublett, 176 Wn.2d at*

*141.*[4] Jury selection in a criminal case is considered part of the public trial right and is

typically open to the public. *State v. Strode*, 167 Wn.2d 222, 227, 217 P.3d 310 (2009).

---

[3] Mr. Love's outburst and attempt to obtain permission to approach the bench during the peremptory process clearly demonstrates Mr. Love was not at the sidebar conference. Although speculative, it is likely that this incident occurred because defense counsel declined to strike any jurors while the two men were together at counsel table making decisions on exercising peremptory challenges.

[4] Although no opinion gathered more than four votes, eight of the nine justices sitting in *Sublett* approved the "experience and logic" test.

No. 30809-0-III consolidated with; 30810-3-III; 30811-1-III
*State v. Love*

As explained in the lead *Sublett* opinion, the "experience and logic" test requires courts to assess the necessity for closure by consideration of both history (experience) and the purposes of the open trial provision (logic). *Sublett*, 176 Wn.2d at 73. The experience prong asks whether the practice in question historically has been open to the public, while the logic prong asks whether public access is significant to the functioning of the right. *Id.* If both prongs are answered affirmatively, then the *Bone-Club* test must be applied before the court can close the courtroom. *Id.*

The prosecutor argues that there was no closure at all because the peremptory and cause challenges were all conducted in the open courtroom in the presence of the venire and any other spectators who may have been present. While the clarity and simplicity of such a bright line rule is appealing, we will leave that issue to another day when it has been thoroughly briefed from a wider perspective. We note that other states have concepts of "limited closure" that may be suggestive to Washington courts in this context. *See, e.g., Commonwealth v. Cohen*, 456 Mass. 94, 921 N.E.2d 906 (2010) (citing cases). As the prosecutor duly noted, at least one state has expressly addressed sidebar conferences in the open courtroom context. *E.g., People v. Virgil*, 51 Cal. 4th 1210, 253 P.3d 553 (2011). Since we reach the same result by use of the experience and logic test in this case, we will not address further whether a sidebar conference constitutes a closure, but will assume that is in fact the case here.

6

No. 30809-0-III consolidated with; 30810-3-III;
30811-1-III
*State v. Love*

The experience prong requires that we look at historic practices. Mr. Love argues

that because cause and peremptory challenges are part of jury selection, a process that is

normally open, the exercise of those challenges must be done openly rather than at

sidebar. We believe this focus is too narrow. The argument here is that the sidebar

conference violated our open courtroom norms because of what occurred at that

conference. The focus thus has to be on whether the activities occurring at that

conference were those normally required to be conducted in public. If Mr. Love had

argued more generally that having *any* sidebar conference during jury selection violated §

22, then his broader focus would be a bit closer to the mark and we would look to historic

practices in the use of sidebar conferences. However, his specific argument is that cause

and peremptory challenges were erroneously conducted at sidebar. We therefore have to

apply the experience and logic test to those practices.[5]

Neither party cites any authority suggesting that challenges for cause are normally

made in public. Challenges for cause, which have existed from our early territorial

---

[5] We take guidance for this approach from *State v. Wilson*, 174 Wn. App. 328, 298
P.3d 148 (2013). There the court clerk excused two jurors who were too ill to report for
jury selection. The *Wilson* court expressly distinguished the voir dire component of jury
selection from the entire process of jury selection and noted that most cases had done the
same. *Id.* at 338-40 (discussing cases). Similarly, another panel applying the experience
and logic test to the selection of alternate jurors focused on the clerk's actions in selecting
the names rather than the general portion of the trial where the activity occurred. *State v.
Jones*, 175 Wn. App. 87, 303 P.3d 1084 (2013).

7

statutes, typically present solely a legal issue, *i.e.*, has the statutory standard been satisfied?[6] A peremptory challenge is one for which no reason need exist and rests in the discretion of the parties. Again, there is no evidence suggesting that historical practices required these challenges to be made in public. Most parties, in fact, would probably rather not have a challenge for cause made in the presence of the juror in case the challenge failed and the juror might serve knowing the identity of a party that had not wanted him or her to serve.

Our research discloses one case in which the defense challenged the "use of secret—written—peremptory jury challenges." *State v. Thomas*, 16 Wn. App. 1, 13, 553 P.2d 1357 (1976). Discerning no prejudice to the defendant from the process, and noting that the process was used in several counties, the court rejected the argument for having "no merit." *Id.* Although suggestive that there may have been an "open" peremptory challenge process in use in other places, *Thomas* is strong evidence that peremptory challenges can be conducted in private.

---

[6] The current statutes governing cause challenges and peremptory challenges in civil cases are found in RCW 4.44.130-.250. All of these statutes trace back to at least 1869; some are earlier. *See* Laws of 1869 §§ 212-223. CrR 6.4(e) supersedes the former statutes that provided for peremptory challenges in criminal cases. Those statutes, former RCW 10.49.030-.060, were repealed by Laws of 1984, ch. 76, § 30, and had their genesis in the Laws of 1854 §§ 102-106.

Also somewhat suggestive is *Sublett* itself. There the court faced a public trial

challenge to the trial court's having answered a written jury question in chambers.

Applying the experience and logic test, the court determined that jury questions had

historically not been answered in open court and that logically there was no need to do so

since answering the question in public did not further the purposes of the public trial

guarantee. *Sublett*, 176 Wn.2d at 75-77. The use of a written question and answer

created a public record that furthered the public trial right. *Id.* at 77.

The history review confirms that in over 140 years of cause and peremptory

challenges in this state, there is little evidence of the public exercise of such challenges,

and some evidence that they are conducted privately. Our experience does not require

that the exercise of these challenges be conducted in public.

Similarly, the logic prong does not indicate that the challenges need to be

conducted in public. The purposes of the public trial right are

> to ensure a fair trial, to remind the officers of the court of the importance of
> their functions, to encourage witnesses to come forward, and to discourage
> perjury.

*State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005).

Those purposes simply are not furthered by a party's actions in exercising a

peremptory challenge or in seeking a cause challenge of a potential juror. The first action

presents no questions of public oversight, and the second typically presents issues of law

9

for the judge to decide.[7] The written record of these actions—the clerk's written juror record and the court reporter's transcription of the cause challenges at sidebar—satisfies the public's interest in the case and assures that all activities were conducted aboveboard, even if not within public earshot. The alternative is to excuse all jurors from the courtroom while legal arguments take place in public concerning a juror's perceived bias. We do not believe the public trial right requires the use of two rooms in order to facilitate the defendant's challenge to some jurors for cause.

Neither prong of the experience and logic test suggests that the exercise of cause or peremptory challenges must take place in public. Mr. Love needed to establish that both aspects of that test required that the courtroom be open. The written record protected the public's interest in Mr. Love's cause challenges[8] and the prosecutor's peremptory challenge. *Sublett*, 176 Wn.2d at 77.

The experience and logic test confirms that the trial court did not erroneously close the courtroom by hearing the defendant's for cause challenges at sidebar, nor would

---

[7] RCW 4.44.240 does provide for testimony if needed to assess a question of juror bias. While that aspect of jury selection would appear to need to take place in the public courtroom, we do not believe that the evidence gathering function should be confused with the legal question of whether a juror displays disqualifying bias.

[8] We need not decide whether Mr. Love's use of the sidebar to make his challenges rather than request a public argument waived his ability to raise the issue without showing how the practice prejudiced him. *Cf. State v. Momah*, 167 Wn.2d 140, 217 P.3d 321 (2009).

No. 30809-0-III consolidated with; 30810-3-III;
30811-1-III
*State v. Love*

it have been error to consider the peremptory challenge in that manner if the court had

done so. The sidebar conference did not close the courtroom.

*Defendant's Presence at Sidebar*

Mr. Love also contends that his due process rights were violated by hearing his for

cause challenges at sidebar without his personal presence. He has not established that

there was manifest constitutional error allowing him to raise this claim for the first time

on appeal.

A criminal defendant has a due process right to be present at all critical stages of

his criminal trial. *State v. Irby*, 170 Wn.2d 874, 246 P.3d 796 (2011). This includes the

voir dire and empanelling stages of the trial. *Id.* at 883-84.

However, Mr. Love did not contest the use of the sidebar procedure to hear his

challenges for cause. The general rule in Washington is that appellate courts will not

hear challenges that were not presented to the trial court. RAP 2.5(a). An exception is

made for issues of "manifest error affecting a constitutional right." RAP 2.5(a)(3). Such

issues may be raised if the record is sufficient to adjudicate them. *State v. McFarland*,

127 Wn.2d 322, 333, 899 P.2d 1251 (1995). The alleged error must both be of

constitutional nature and be "manifest" in the sense that it actually prejudiced the

defendant. *Id.*

11

Mr. Love has not established that the alleged constitutional error was manifest because he has not shown that he was prejudiced by the process.[9] He was present beside his counsel during the information gathering phase of voir dire and apparently had the opportunity to provide any input necessary to whether to pursue any challenges for cause. His counsel then successfully challenged two jurors for cause, and the parties discussed but did not need to reach the qualifications of three other jurors who would not make it on to the panel. Having succeeded in his cause challenges at the sidebar conference, he simply cannot show how he was prejudiced by the procedure.

His due process claim therefore is not manifest error. Accordingly, Mr. Love cannot pursue that claim for the first time in this court. RAP 2.5(a)(3); *McFarland*, 127 Wn.2d at 333.

*Value of a Cancelled, Postdated Check*

Lastly, Mr. Love argues that there is insufficient evidence of his second degree theft conviction involving Ms. L. because the postdated check had no value and the money order that he took was valued below the second degree theft limit. The

---

[9] We question, although do not decide, whether Mr. Love has established he was not present. As we have just determined, the courtroom was not closed by the sidebar conference and Mr. Love was admittedly in the courtroom during jury selection. If "present" means standing beside counsel he might be correct, but there has been no authority presented suggesting that presence has such a meaning. He was in the courtroom, which was "open" to him.

No. 30809-0-III consolidated with; 30810-3-III;
30811-1-III
*State v. Love*

Washington Supreme Court has already decided this issue in an older case that is still

applicable to the modern statute.

Second degree theft is committed (as charged in this case) when a defendant takes

property or services having a value in excess of $750 belonging to another. RCW

9A.56.020(1)(b); RCW 9A.56.040. The word "value" typically means the market value

of the property in the area at the time of the crime, and with respect to checks, the value

"shall be deemed the amount due or collectible thereon or thereby, that figure ordinarily

being the face amount of the indebtedness less any portion thereof which has been

satisfied." RCW 9A.56.010(21).

Seizing upon the "ordinarily" clause of the quoted material, Mr. Love argues that

the postdated nature of the check in question, which was then cancelled before the date

on the instrument, meant that the face value of the check was no longer sufficient to

support the valuation. His arguments require us to decide if either cancellation or

postdating effects the face value of an instrument. We conclude that the answer is "no"

in both cases.

The cancellation issue was previously decided in *State v. Easton*, 69 Wn.2d 965,

422 P.2d 7 (1966). There a stolen check with a face value of $95 was cancelled before

the defendant had the opportunity to attempt to cash it. *Id.* at 967. Former RCW

9.54.100 (1965) provided (in part) that the value of an instrument "shall be deemed the

13

amount due thereon or secured thereby." *Easton*, 69 Wn.2d at 970 (quoting statute). The court noted both that the statutory definition of value was not affected by the cancellation and that the cancellation did not affect the negotiability of the check. *Id*. at 970-71.

The quoted language of former RCW 9.54.100 is similar to the modern definition of RCW 9A.56.010(21)(b). *State v. Lampley*, 136 Wn. App. 836, 841, 151 P.3d 1001 (2006). Both statutes describe value in terms of what the instrument states on its face. Neither definition mentions cancellation as an exception to the face value rule. As did the *Easton* court under the former statute, we conclude that the cancellation of a stolen check does not alter its face value under RCW 9A.56.010(21)(b). The value of the check given to Mr. Love was established when it was created and was not affected by the subsequent cancellation.

Mr. Love also argues that because the check was postdated, it had a value of zero when he acquired it. For several reasons, we again disagree. First, nothing in the definition of "value" under the statute speaks to the date the obligation comes due. Rather, it is strictly defined in terms of the face value of the obligation less any payments made. Second, even an instrument with a future maturity date has current value, although perhaps at a discounted rate. Our bond markets operate on that principle.

Third, the Uniform Commercial Code (UCC) recognizes that postdated checks do create liability and are negotiable. Even though an instrument is not payable on demand

14

until the stated date,[10] the modern practice is to pay a check when it is presented unless

the drawer has expressly advised the bank not to pay until the date of the check. RCW

62A.4-401(c). This is to accommodate automated check cashing systems. *See* RCWA

62A.4-401 U.C.C. cmt. 3, at 331.

On the basis of these UCC provisions, Division One of this court upheld a forgery

conviction involving a postdated check in *State v. Young*, 97 Wn. App. 235, 984 P.2d

1050 (1999). There the defendant had photocopied several checks made out to him and

presented the photocopies, at different times, to a check cashing store. One of the checks

was presented two days before the date of the check. *Id.* at 237-38. Considering the

noted UCC provisions, particularly RCW 62A.4-401(c), the court concluded that the

postdated check did create a legal liability and upheld the forgery conviction. *Id.* at 239-

40.

Accordingly, we conclude that neither the postdating of the check by Ms. L. nor

its subsequent cancellation invalidated the check. Mr. Love received an instrument of

value when he deceived Ms. L. into giving it to him. Accordingly, the evidence was

sufficient to support that count.

---

[10] RCW 62A.3-113(a).

15

No. 30809-0-III consolidated with; 30810-3-III;
30811-1-III
*State v. Love*

The convictions are affirmed.

_____
Korsmo, C.J.

WE CONCUR:

_____
Kulik, J.

_____
Siddoway, J.

16