[No. 38830. Department One. December 15, 1966.]

THE STATE OF WASHINGTON, *Respondent*, v. LARRY C. EASTON, *Appellant.*[*]

*Harvey Erickson,* for appellant (Appointed counsel for appeal).

*George A. Kain* and *Lee A. Larson,* for respondent.

[*]Reported in 422 P.2d 7.

JAMES, J.†—Appellant was charged, tried before a jury, and convicted of the crime of grand larceny. The information alleged:

That the said defendant, Larry C. Easton, in the County of Spokane, State of Washington, on or about the 6th day of November, 1965, then and there being, did then and there wilfully, unlawfully and feloniously, with intent to deprive and defraud the owner thereof, receive into his possession, conceal and aid in concealing and withholding property wrongfully appropriated and stolen, knowing the same to have been so wrongfully appropriated and stolen, to-wit: Social Security Insurance Check No. 46,-917,768, dated August 3, 1965, in the amount of Ninety-five Dollars ($95.00), and the property of and belonging to another.

Appellant called no witnesses and did not testify himself. The evidence which satisfied the jury as to his guilt was as follows: Mary Farrar operated a small rooming house in Spokane. On August 3, 1965, she accepted the social security check described in the information in payment of room rent. That day, two of her friends, appellant and Larry Olson, called on her for a social visit. They spent 8 hours eating and drinking. At some point of time the hostess became suspicious of her guests and secreted her cash in a dresser drawer in her bedroom. She hid the check in a wastebasket in the bathroom. While the two men were in the apartment it became necessary for her to leave on several occasions to attend to normal management functions.

About 7:30 in the evening she looked for her cash and discovered that it was missing. She called the Spokane Police Department and two detectives came and escorted appellant and friend to the police station where they were searched. They did not have the missing money, nor did the search turn up the social security check. Appellant and friend were released. They did not return to the apartment.

After releasing the men, the officers returned to the apartment and a search there turned up the missing cash

---

†Judge James is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

under a rug. It was not until after the officers left the second time that Mary Farrar discovered that the social security check was no longer in the wastebasket.

No one, other than Mary Farrar, appellant and Olson was in the apartment that afternoon and evening prior to the arrival of the detectives. Subsequently Mary Farrar asked appellant if he had any knowledge of the check and its disappearance. He denied any knowledge.

In October 1965, appellant was confined in the county jail on an unrelated charge. There he met another inmate named Long. He told Long that he had some stolen property that he would like to dispose of. Long went to Deputy Sheriff Hadley and told him of appellant's conversation. Long then agreed to assist the sheriff in inducing appellant to disclose the stolen property.

On November 3, 1965, after appellant's release from jail, he and Long met in a cocktail lounge. Mary Farrar's missing social security check was exhibited to Long. Thereafter, the sheriff gave Long $75 with which to purchase the check from appellant. Long obtained the check from appellant on November 6, 1965, and later paid him the $75 received from the sheriff, telling appellant that he had to discount the check $20 to his buyer.

On August 20, 1965, Mary Farrar had reported the theft of the check and made claim thereon to the Treasury Department. Subsequently the Treasury Department issued a stop payment notice on the check and honored Mary Farrar's claim for reimbursement.

■ Appellant's assignment of error No. 1:

> The information did not state a crime in that the owner or possessor of the property is not alleged in the information . . . .

Over 70 years ago this court stated:

> It is not necessary under our code or under any system of pleading to allege in the indictment for larceny in whose possession the property is, but it is sufficient to allege and prove that the property stolen was the property of another. *State v. Coss*, 12 Wash. 673, 675, 42 Pac. 127 (1895).

This ruling was adhered to in *State v. Kruger,* 145 Wash. 654; 655, 261 Pac. 383 (1927), where it held:

It has long been held that it is not necessary for the state to identify stolen property as belonging to any specified individual. Convictions of larceny have been affirmed on the proof that the property involved did not belong to the defendant, while its actual ownership could not be positively shown. *State v. Coss,* 12 Wash. 673, 42 Pac. 127; *State v. Smith,* 40 Wash. 615, 82 Pac. 918, 5 Ann. Cas. 686; *State v. Eddy,* 46 Wash. 494, 90 Pac. 641; *State v. McIntyre,* 53 Wash. 178, 101 Pac. 710; *State v. Ray,* 62 Wash. 582, 114 Pac. 439.

Appellant further argues that we should require the identification of the owner of stolen property to enable an accused to raise a plea in bar of subsequent prosecution for the same offense. A similar contention was disposed of in *State v. Martin,* 94 Wash. 313, 316, 162 Pac. 356 (1917):

The cases holding that it is necessary to allege ownership in charging the crime of receiving stolen property, and there are many such cases, are based not upon the idea that ownership is an essential element of the crime, but that an allegation of ownership is necessary as a matter of description; that the transaction is identified not only by a description of the property, but also by the ownership; that identity of the property embraces the element of ownership as a necessary part of the description. The fundamental reason upon which these cases seem to be based is that the information or indictment must upon its face so completely identify the transaction that a judgment of conviction or acquittal would constitute a bar to a subsequent prosecution for the same offense. In view of the rule permitting parol evidence to be introduced for the purpose of identifying the offense where a plea of former jeopardy is interposed, this reason loses much of its force. These cases hold also that, if the name of the owner is unknown, an allegation to that effect will excuse the failure to state ownership. It is difficult to see how an allegation that the owner is unknown would in any manner tend to identify the offense for any purpose. Manifestly it would not furnish the accused any useful information nor assist him in the preparation of his defense; and if the judgment subsequently should be pleaded in bar of another prosecution, the identity of the offense

would have to be established by looking to other descriptive allegations or by resorting to oral testimony.

The check in question here was identified in detail in the information and was introduced in evidence. It is inconceivable that appellant's right to a plea of former jeopardy could be impaired.

Appellant's assignment of error No. 2:

The court improperly refused to dismiss the case at the end of the state's case because the evidence showed the following:

a. The social security check No. 46,917,768 had no value because payment on said check had been stopped.

b. Only $75.00 had been paid for the check.

c. The sheriff knew the check to be worthless at the time he purchased it.

d. There was no proof at the time of trial that anyone owned or claimed the check.

Appellant's argument in support of his second assignment is grounded on the assumption that the transaction which allegedly constituted grand larceny was the sale of the check to the sheriff for the sum of $75. Hence, appellant reasons: (1) Payment had been stopped; therefore, the check itself was in fact worthless. (2) The sheriff knew that the check was stolen so he could not be a holder in due course (an innocent purchaser for value) even if it had value. (3) Payment having been stopped, no one claimed ownership thereof except possibly the sheriff who admittedly acquired it solely for the purpose of prosecution.

Based upon these assumptions appellant argues that no larceny was established because there was no evidence that anybody lost anything of value. Further, appellant argues that at most the transaction could support only a conviction for petit larceny because of the statutory delineation of "more than $75.00," RCW 9.54.090.

Finally, appellant asserts that the sheriff's involvement in the acquisition of the check from him constituted "entrapment."

All of these arguments miss the mark. The sale of the stolen check to the sheriff was not the crime charged.

The elements of the crime charged were: (1) The receiving, concealing, and withholding of the check. (2) The knowledge that it was stolen. (3) The intent to deprive the owner thereof. (4) The value of the check—more than $75. RCW 9.54.010(5). As to the proof of the first three elements, there is no question. Appellant not only told his cell mate, Long, that he had the stolen check, he produced it, and sold it. The sole question then is as to element No. 4. Did the state prove value? RCW 9.54.100 defining value for the purposes of the crime of larceny provides as follows:

> The value of all instruments not having a market value, whether issued or delivered or not, by which any claim, . . . is, or purports to be, . . . evidenced, . . . shall be deemed to be the amount of money due thereon or secured to be paid thereby and unpaid, or which in any contingency might be collected thereon or thereby, . . . .

The value therefore of Mary Farrar's rent check was its face value, $95.

▮▮ Did the fact that payment was stopped upon the check render it valueless? The answer is no. The "instrument" (the statutory term) here involved is perhaps the most negotiable of negotiable instruments—a United States Treasury check. The issuance of the stop payment notice by the Treasury Department neither affected the negotiability of the check nor discharged the Treasury Department's liability thereon. A holder in due course could enforce payment for the full amount thereof. RCW 62.01.057; 11 Am. Jur. 2d Bills and Notes § 398.[1] Neither did the fact

---

[1] "The doctrine which protects a holder in due course is founded on the broadest principles of public policy, public policy with regard to the utility, free circulation, and credit of negotiable paper in the commercial world. Indeed, the convenience and necessities of commerce require negotiable instruments which can pass almost as freely in the commercial world as legal tender, and demand, consequently, the protection of those holding them in due course. The protection of a holder in due course is sometimes explained as an estoppel by reason of a contract in direct line of negotiation; in other words, one putting negotiable paper on the market is estopped from contesting the consequences and incidents of his act." 11 Am. Jur. 2d Bills and Notes § 399.

that the check had been stolen impair its negotiability. *Angus v. Downs,* 85 Wash. 75, 147 Pac. 630 (1915).[2]

█ As stated heretofore, the sale of the stolen check was not the crime charged. Even if it were, however, the defense of "entrapment" would not be available to appellant. Only where the accused is lured or induced by an officer of the law or some other person, a decoy or informer, to commit a crime which he had no intention of committing is the defense provable, *State v. Moore, ante* p. 206, 417 P.2d 859 (1966). The appellant himself set in motion the events which culminated in the sale of the check to the sheriff. Appellant's assignment of error No. 3, "If any crime was committed, the crime was Petty Larceny rather than Grand Larceny," and No. 4, "The court improperly refused to arrest judgment on the motion for a new trial," are included in his first two assignments and are disposed of by our ruling thereon.

The judgment is affirmed.

ROSELLINI, C. J., HILL, HUNTER and HALE, JJ., concur.

[2]"It is familiar law that one in possession of chattels by theft can convey no title even to an innocent purchaser. But an exception to this rule is made in regard to money as to which an innocent purchaser for value from a thief may acquire good title even as against the true owner. From the highest considerations of public policy and of commercial necessity, the law also excepts from the rule negotiable instruments acquired for value in good faith before maturity and without notice. Such paper takes the place and performs, to a large extent, the office of money. It is used for the transaction of much the largest part of the business of mankind. It would be most embarrassing, therefore, if every taker of such paper was bound, at his peril, to inquire into the title of the holder, and if he was obliged to take it with all the imperfections and subject to all the defenses which attach to it in the hands of the holder. It has, therefore, become settled by force of considerations such as these that a thief or any other person having possession of such paper fair upon its face can give a holder in due course a good title to it, against all the parties thereto, as well as the true owner." 11 Am. Jur. 2d *Bills and Notes* § 722.