[No. 12200–6–II.   Division Two.   March 2, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID SKORPEN, *Appellant.*

---

*Robert W. Huffhines, Jr.,* for appellant (appointed counsel for appeal).

*C.C. Bridgewater, Jr., Prosecuting Attorney,* and *Suzan L. Clark, Deputy,* for respondent.

FARIS, J.*—David Skorpen appeals his conviction of theft in the second degree. Skorpen found and attempted to pass a check that had been forged previously by another in the amount of $375. Skorpen requested a jury trial on an amended 2–count information that charged forgery and theft in the second degree by appropriating lost or misdelivered property. The court ruled, as a matter of law, that a forged check has a value equal to its face amount.

Following the court's ruling, the parties stipulated to the following facts: While on a street in the Longview–Kelso area on April 19, 1988, Skorpen found the driver's license of Greg Harris together with a document that purported to be a check that was payable to Harris in the amount of $375. The check was drawn on the First Interstate Bank account of R.K. Anthony, whom Skorpen knew. The check was complete; Skorpen did not write upon or otherwise alter it. Although Skorpen believed the check to be genuine, the check was actually forged. It was not, however, forged by Skorpen, and it was not endorsed by Harris. Using Harris' driver's license for identification, Skorpen unsuccessfully attempted to pass the check at First Interstate Bank.

Based upon this stipulation, the trial court found[1] Skorpen guilty of theft in the second degree by appropriating lost or misdelivered property. On the State's motion, the

---

*This appeal was heard by a Court of Appeals Judge, together with two retired Superior Court Judges sitting as Court of Appeals Judges Pro Tempore in Division Two.

[1]Despite some procedural confusion, the record as a whole reflects that the parties agreed to a bench trial upon stipulated facts.

trial court dismissed the forgery count.[2] Skorpen appeals, and we reverse.

The parties agree that Skorpen committed a theft[3] but disagree as to the degree of that theft. At a minimum, Skorpen committed theft in the third degree,[4] which is a gross misdemeanor. RCW 9A.56.050. If the forged check that Skorpen found had a value equal to its face amount, however, Skorpen committed theft in the second degree,[5] which is a class C felony. RCW 9A.56.040.

Thus, the disposition of this case turns upon whether the value of the forged check was its face amount, which in turn depends upon the construction of a statutory definition:

---

[2]Based upon the stipulated facts, Skorpen did not commit the crime of forgery because he neither wrote upon the check nor knew that the check was forged:

A person is guilty of forgery if, with intent to injure or defraud:

(a) He falsely makes, completes, or alters a written instrument or;

(b) He possesses, utters, offers, disposes of, or puts off as true a written instrument which he knows to be forged.

RCW 9A.60.020(1).

[3]The offense is statutory:

"Theft" means:

(a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or

(b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or

(c) To appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him of such property or services.

RCW 9A.56.020(1). The State charged and the defense agreed that Skorpen appropriated lost or misdelivered property with intent to deprive. RCW 9A.56-.020(1)(c).

[4]"A person is guilty of theft in the third degree if he commits theft of property or services which does not exceed two hundred and fifty dollars in value." RCW 9A.56.050(1).

[5]"A person is guilty of theft in the second degree if he commits theft of:

"(a) Property or services which exceed(s) two hundred and fifty dollars in value, but does not exceed one thousand five hundred dollars in value . . .". RCW 9A.56.040(1).

(a) "Value" means the market value of the property or services at the time and in the approximate area of the criminal act.

(b) Whether or not they have been issued or delivered, written instruments, except those having a readily ascertained market value, shall be evaluated as follows:

(i) The value of an instrument constituting an evidence of debt, such as a check, draft, or promissory note, shall be deemed the amount due or collectible thereon or thereby, that figure ordinarily being the face amount of the indebtedness less any portion thereof which has been satisfied;

. . . .

(iii) The value of any other instrument that creates, releases discharges, or otherwise affects any valuable legal right, privilege, or obligation shall be deemed the greatest amount of economic loss which the owner of the instrument might reasonably suffer by virtue of the loss of the instrument.

. . . .

(e) Property or services having value that cannot be ascertained pursuant to the standards set forth above shall be deemed to be of a value not exceeding two hundred and fifty dollars;

. . . .

RCW 9A.56.010(12).

Because no evidence was adduced as to market value, RCW 9A.56.010(12)(a), its value must be determined under either subsection (12)(b)(i), subsection (12)(b)(iii), or subsection (12)(e). If the value is not determined under subsections (12)(b)(i) or (12)(b)(iii), then subsection (12)(e) applies, and the conviction must be reversed.

The State argues that the value of the check "shall be deemed the amount due or collectible thereon or thereby, that figure ordinarily being the face amount . . .". RCW 9A.56.010(12)(b)(i). In interpreting the predecessor statute[6] that defined value, the Supreme Court held that the value of a stolen check is its face amount. *State v. Easton,* 69 Wn.2d 965, 970, 422 P.2d 7 (1966). The Supreme Court

---

[6]The statute provided as follows:

"The value of all instruments not having a market value, whether issued or delivered or not, by which any claim . . . is, or purports to be, . . . evidenced, . . . shall be deemed to be the amount of money due thereon or secured to be paid thereby and unpaid, or which in any contingency might be collected thereon or thereby . . .". Former RCW 9.54.100.

reached a similar result in deciding that a defendant had extorted a valuable security or instrument of writing even though the check would not have been honored by the drawee bank due to an irregularity in the signature of the maker. *State v. Barr,* 67 Wash. 87, 89–90, 120 P. 509 (1912).

Other jurisdictions have reached similar results. The value of a stolen check that had been stamped with a restrictive endorsement, for example, has been held to be its face amount even though the thief could not have negotiated it. *People v. Marques,* 184 Colo. 262, 520 P.2d 113, 116–17 (1974). These cases are distinguishable, however, because the checks were not forgeries and the owners of the checks lost something of value.

In the present case, we conclude that the owner of the forged check that Skorpen stole did not lose anything of value. In *State v. Madewell,* 603 S.W.2d 692 (Mo. Ct. App. 1980), the court stated that a "forged check has no value as a chose in action and if there was a theft of the check the only thing stolen was a piece of paper having little, if any, intrinsic value." *State v. Madewell,* 603 S.W.2d at 695.

The statutory construction that is urged by the State requires that the check be "an instrument constituting an evidence of debt . . .". RCW 9A.56.010(12)(b)(i). This requirement is readily satisfied in the usual maker–payee relationship. The check itself evidences an obligation from the maker to the payee in an amount equal to that stated upon the face of the check. When that check is stolen, the payee loses something of prima facie value, *i.e.,* the right to proceed against the maker in the event that the drawee dishonors it, even if the payee did not take the check for value. *See* RCW 62A.3–301 (rights of a holder); RCW 62A.3–306 (rights of one not holder in due course).

When the check is forged by means of an unauthorized signature of the maker, however, that maker–payee rela-

tionship does not exist. The payee may recover from the forger, but only if the payee in good faith pays the check or takes it for value. RCW 62A.3–404(1) (unauthorized signatures). Thus, a forged check does not by itself constitute evidence of a debt; extrinsic evidence is necessary to show that the payee in good faith paid the check or took it for value. Such evidence is completely lacking in the present case.

An accepted rule of statutory construction suggests a different result than that urged by the State. Statutes are construed wherever possible so that no portion is superfluous. *In re Marriage of Gimlett,* 95 Wn.2d 699, 703, 629 P.2d 450 (1981). The State argues that the value of the check "shall be deemed the amount due or collectible thereon or thereby, that figure ordinarily being the face amount . . .". RCW 9A.56.010(12)(b)(i). In order to avoid rendering part of this phrase superfluous, it must be construed so as to recognize the possibility of situations in which the amount due or collectible on a written instrument is not its face amount.

An obvious example of such a situation is where the instrument does not satisfy the statutory requirements of an instrument under the Uniform Commercial Code. "'Instrument' means a negotiable instrument." RCW 62A.3–102(1)(e). "Any writing to be a negotiable instrument within this Article must (a) be signed by the maker or drawer; and (b) contain an unconditional promise or order to pay a sum certain in money . . .". RCW 62A.3–104(1). An instrument that is forged by means of an unauthorized signature of the maker is not signed by the maker. RCW 62A.3–404(1). Therefore, it is not negotiable. 6 R. Anderson, *Uniform Commercial Code* 149 (1984). We conclude that the statute is not ambiguous. RCW 9A.56.010(12)(b)(i) speaks of the "amount due or collectible". Clearly, nothing is due or collectible on a forged check.

General policy considerations support our decision in the present case:

> The general purposes of the provisions governing the definition of offenses are:
> (a) To forbid and prevent conduct that inflicts or threatens substantial harm, to individual or public interests;
>
> . . . .
>
> (d) To differentiate on reasonable grounds between serious and minor offenses, and to prescribe proportionate penalties for each.

RCW 9A.04.020(1).

Skorpen committed a theft. He had the intent to commit the theft of $375. He believed that the check was genuine and worth $375; however, the check was forged and worth nothing or nearly nothing. He tried to commit the harm that the Legislature sought to prevent in enacting the theft statutes, *i.e.,* economic loss to the owners of property. Skorpen's attempt to commit theft in the second degree, however, failed. Therefore, the crime of theft in the second degree remained inchoate.

Other jurisdictions have recognized this principle in defining "value." *See, e.g., People v. Marques, supra* at 168. "The value of the thing lost is not limited to what the thief could realize on the instrument. . . . [T]he loss is measured by what the owner could expect to receive for the instrument." *People v. Marques, supra* at 269. In the typical situation involving the theft of a check, the payee suffers an actual economic loss equal to what he could have obtained through presentment to the drawee bank. In the present case, Harris, as payee of the forged check, had no right of presentment to the drawee bank and had no claim against Anthony, the purported maker. RCW 62A.3–404. When the forged check was stolen, any actual economic loss was highly speculative. The owner of the forged check is unknown, but he clearly sustained only a minor loss. Thus, even if the value of the forged check is measured by reference to RCW 9A.56.010(12)(b)(iii), Skorpen only committed theft in the third degree.

Reversed.

PETRICH, A.C.J., and MITCHELL, J. Pro Tem., concur.

Reconsideration denied April 25, 1990.