[No. 33701-1-II.   Division Two.   November 7, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. JERRY RONALD LAMPLEY, *Appellant*.

*Roger A. Hunko*, for appellant.

*H. Steward Menefee, Prosecuting Attorney*, and *Gerald R. Fuller, Deputy*, for respondent.

¶1 ARMSTRONG, J. — A Grays Harbor County jury convicted Jerry Lampley of second degree possession of stolen property, based on his knowing possession of a stolen government check with a face value of $621.10. The trial court imposed a sentence consecutive to one imposed by Pierce County. Lampley appeals his conviction and his sentence. Finding no error, we affirm.

## FACTS

¶2 Washington State paid Juliaetta Holt monthly for her work as a home care provider. Holt expected to receive a $621.10 check in her mailbox in early September 2004, but she never got it. After she signed an affidavit reporting the check "lost or destroyed" and signed an "affidavit of forged indorsement [sic],"[1] Washington issued her a new check, which she received in January or February 2005. Clerk's Papers (CP) at 34; Report of Proceedings (July 26, 2005) at 36-37. Holt did not know Lampley, did not endorse the stolen check, and did not give it to anyone.

---

[1] At trial, the court admitted as exhibits the check with its stub, the "affidavit of forged indorsement [sic]," and the "vendor affidavit lost warrant." Clerk's Papers at 34. Lampley has not included these exhibits in the appellate record.

¶3 The police found the check in Lampley's wallet[2] approximately six months later, on March 1, 2005. Someone had forged Holt's endorsement on the back of the check. The police found a single phone number and a partly illegible reference to a car written on the back of the associated check stub.

¶4 Lampley told the officer he did not know whether the check was stolen. But he admitted he did not know Holt. He thought someone at a casino gave it to him. Lampley said he was keeping the check because he planned to use several phone numbers written on its back to find his father.

¶5 The State charged Lampley in Grays Harbor County Superior Court with second degree possession of stolen property, alleging the check had a value of $621.10. The trial court instructed the jury that the State must prove the stolen property had a value of more than $250. In jury instruction 8, the court told the jury "[t]he value of an instrument constituting evidence of debt, such as a check, is the face value of the indebtedness less any portion thereof which has been satisfied."[3] CP at 38. In his closing argument, Lampley told the jury the original stolen check had no value because Washington satisfied the debt by reissuing Holt's check.

¶6 After it began deliberating, the jury asked the trial court, "[d]oes reissue equal satisfied?" CP at 31. Over defense objection, the court answered, "The value of a written instrument is not affected by the fact that a replacement may have been issued." CP at 32-33. The jury convicted Lampley.

---

[2] The police did so after arresting him on an unrelated warrant. Lampley does not challenge the validity of the arrest or search.

[3] This instruction appears to be based on RCW 9A.56.010(18)(b)(i). That statute defines the value of a stolen negotiable instrument, to be used when a prosecutor must prove value. It declares: "The value of an instrument constituting an evidence of debt, such as a check, draft, or promissory note, shall be deemed the amount due or collectible thereon or thereby, that figure ordinarily being the face amount of the indebtedness less any portion thereof which has been satisfied." RCW 9A.56.010(18)(b)(i).

¶7 After police arrested Lampley for possessing the stolen check in Grays Harbor County, the Pierce County Superior Court sentenced him on March 31, 2005, for a different felony committed in 2002. Lampley was serving the Pierce County sentence when the Grays Harbor County Superior Court sentenced him for possession of the stolen check. Citing RCW 9.94A.589(3),[4] the State asked the Grays Harbor Superior Court to impose a standard range sentence consecutive to the Pierce County sentence. The court did so.

## ANALYSIS

### A. VALUE OF THE STOLEN CHECK

¶8 Lampley contends the check had no value because someone falsely endorsed it.

¶9 To convict Lampley of second degree possession of stolen property, the State had to prove Lampley possessed stolen property worth more than $250. RCW 9A-.56.160(1)(a). The value of a stolen check is defined in RCW 9A.56.010(18)(b)(i):

> The value of an instrument constituting an evidence of debt, such as a check, draft, or promissory note, shall be deemed the amount due or collectible thereon or thereby, that figure ordinarily being the face amount of the indebtedness less any portion thereof which has been satisfied.

In defining value, the statute focuses on what the face of the instrument proclaims.

¶10 By setting the value of the stolen check at its face amount, the statute focuses on and attributes value to the

---

4

Subject to subsections (1) and (2) of this section, whenever a person is sentenced for a felony that was committed while the person was not under sentence for conviction of a felony, the sentence shall run concurrently with any felony sentence which has been imposed by any court in this or another state or by a federal court subsequent to the commission of the crime being sentenced *unless the court pronouncing the current sentence expressly orders that they be served consecutively.*

RCW 9.94A.589(3) (emphasis added).

instrument's negotiability. *See* RCW 62A.3-104 (defining "negotiable instrument"). Negotiable instruments are "negotiable" because they can themselves be transferred or "negotiated" in transactions independent of the original obligation between the maker or drawer and the payee. *See* RCW 62A.3-201 through -207; *see generally* JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE §§ 13-1, 13-9 through 13-10 (3d ed. 1988). A transferee can enforce the instrument; a transferee who is a "holder in due course" can usually enforce the instrument even if the original payee could not. RCW 62A.3-203(b), 3-301 through -312; WHITE & SUMMERS, *supra*, §§ 14-1, 14-9 through -10. And " 'the convenience and necessities of commerce require negotiable instruments which can pass almost as freely in the commercial world as legal tender, and demand, consequently, the protection of those holding them in due course.' " *State v. Easton*, 69 Wn.2d 965, 970 n.1, 422 P.2d 7 (1966) (quoting 11 AM. JUR. 2D *Bills and Notes* § 399).

¶11 Interpreting a previous but similar statutory definition of value,[5] our Supreme Court held the value of a stolen genuine check is the face value, even when the check drawer has stopped payment because of the theft. *Easton*, 69 Wn.2d at 970-71. In *Easton*, the United States Treasury issued the check; when the owner reported the theft, the government stopped payment and issued a new check. *Easton*, 69 Wn.2d at 966-67.[6] These actions, not reflected on the face of the check, did not reduce its value.

¶12 But a stolen check bearing the forged signature of the purported drawer does not actually evidence a debt and

---

[5] "The value of all instruments not having a market value . . . by which any claim [or] obligation . . . to property . . . is . . . evidenced . . . shall be deemed to be the amount of money due thereon or secured to be paid thereby and unpaid . . . ." Former RCW 9.54.100 (1974).

[6] In addition to applying the statutory definition of value, the *Easton* court set the value of a stolen check at its face value because the thief could sell the stolen check to an innocent third party who would be able to enforce it as a holder in due course. *Easton*, 69 Wn.2d at 970-71. This is true only when the check is bearer paper when stolen; when a thief steals order paper and then transfers it, no one in the resulting transfer chain can become a holder. WHITE & SUMMERS, *supra*, §§ 13-9, 14-3, 15-2; *see* RCW 62A.1-201(20), .3-201.

its value is zero, not the amount declared on its face. *State v. Skorpen*, 57 Wn. App. 144, 148-49, 787 P.2d 54 (1990). *Skorpen* distinguished stolen forged checks from genuine checks signed by the drawer but later stolen. *Skorpen*, 57 Wn. App. at 148.

¶13  One endorses a check to negotiate it, not to create it. RCW 62A.3-104, -201(b), -204. By definition, an endorsement is not the signature of the drawer. RCW 62A.3-204(a). By endorsing the check, the endorser creates a separate contract and potential liability separate from the drawer or drawee. RCW 62A.3-204, -415.

¶14  Lampley possessed a stolen genuine check drawn by Washington State. It evidenced an actual debt Washington owed Holt. The forged endorsement suggests fraudulent transfer of the check but does not alter the genuine nature of the check itself for purposes of establishing value. Because the drawer actually signed it, the check itself is genuine. *Skorpen* is thus distinguishable. Under both RCW 9A.56.010(18)(b)(i) and *Easton*, the check's value is therefore its face amount.

### B. INSTRUCTION ON VALUE AFTER REISSUANCE

¶15  Lampley contends the trial court commented on the evidence when it instructed the jury that reissuing a stolen check did not change the check's value.

¶16  The Washington State Constitution forbids trial judges from commenting on trial evidence. WASH. CONST. art. IV, § 16; *State v. Woods*, 143 Wn.2d 561, 590-91, 23 P.3d 1046 (2001). Judges comment on the evidence if they reveal their personal evaluation of the merits or if their statements allow the jury to infer the judge either believed or disbelieved some of the evidence. *State v. Deal*, 128 Wn.2d 693, 703, 911 P.2d 996 (1996). Judges also comment on the evidence when they instruct the jury that factual issues have been established as a matter of law. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). Thus, a court may comment on the evidence when it incorporates specific facts in a jury instruction. *Levy*, 156

Wn.2d at 721-23. But a judge does not comment on the evidence by merely stating relevant law accurately. *Woods*, 143 Wn.2d at 591.

■ ¶17 When the trial court instructed the jury that "[t]he value of a written instrument is not affected by the fact that a replacement may have been issued," it neither included specific facts nor declared the check's value as a matter of law. The court did not convey its belief or disbelief of any testimony. The instruction is phrased as a neutral statement of the law and is not a comment on the evidence. If accurate, the instruction was proper.

¶18 As noted above, RCW 9A.56.010(18)(b)(i) defines the value of a stolen check based on what its face declares to a third party. The face of the check Lampley possessed did not reveal Washington State had reissued it or otherwise satisfied the debt. And *Easton* held that a stolen check's value remained its face amount even after the drawer satisfied the debt with a new check. The trial court's supplemental instruction accurately stated the law.

## C. Consecutive Sentences under RCW 9.94A.589(3)

¶19 Lampley maintains that the trial court violated his right to a jury trial when it imposed a consecutive sentence under RCW 9.94A.589(3) without jury findings.

■■ ¶20 Generally, when a superior court sentences a defendant for two or more current felonies, it must impose concurrent sentences. RCW 9.94A.589(1)(a). But RCW 9.94A.589(3) grants a sentencing court "total discretion" to impose a sentence consecutive to one imposed for a different felony when (1) the defendant was not serving a sentence when he committed the current crime and (2) a court imposed the sentence for the different felony after the defendant committed the current crime. *State v. Champion*, 134 Wn. App. 483, 487-88, 140 P.3d 633 (2006); RCW 9.94A.589(3).

¶21 The current sentencing court must "expressly order[ ]" a consecutive sentence but need not find any addi-

tional facts to do so. *Champion*, 134 Wn. App. at 487. If RCW 9.94A.589(3) allows a consecutive sentence, imposing one does not violate the defendant's federal or state constitutional right to jury trial. *Champion*, 134 Wn. App. at 488-89.

¶22 *Champion* controls Lampley's challenge to his consecutive sentence. When Lampley appeared in Grays Harbor Superior Court for sentencing, he was serving a Pierce County sentence imposed after he possessed the stolen check. He had not begun to serve the Pierce County sentence when he possessed the check. Under RCW 9.94A.589(3), the trial court had discretion to impose a consecutive sentence if it expressly ordered it. It did and, in doing so, did not violate Lampley's federal or state constitutional right to jury trial.

¶23 In conclusion, we hold that the State proved the value of the stolen check with its face amount and the court's supplemental instruction was an accurate statement of the law. Further, the trial court did not violate Lampley's right to a jury trial when it imposed a consecutive sentence.

¶24 Affirmed.

BRIDGEWATER and HUNT, JJ., concur.