

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79063-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SHARYL M. SMITH, | ) | |
| | ) | FILED: February 25, 2019 |
| Appellant. | ) | |

VERELLEN, J. — Sharyl Smith appeals her judgment and sentence for multiple counts of first degree identity theft, first degree theft, and forgery. Smith argues that erroneous trial court rulings violated constitutional right to present a defense, that her attorney provided ineffective assistance of counsel, and that the State's charging documents provided inadequate notice of her alleged crimes. Because she fails to demonstrate any erroneous ruling or prejudicial error, we affirm her conviction and sentence. But the State concedes a $200 filing fee and a $100 DNA[1] testing fee should not have been imposed on Smith because the court found her indigent.

Therefore, we affirm Smith's conviction and sentence except that we remand for the court to strike those fees.

---

[1] Deoxyribonucleic acid.

## FACTS

Smith was the sole bookkeeper for Spaeth Transfer, Inc., a moving and storage company, from October of 2012 through October of 2015. After Spaeth fired Smith for sleeping on the job and failing to complete tasks on time, it discovered over $200,000 in accounting irregularities and called the police. The police investigation found that Smith issued unauthorized checks to herself and her husband and that Smith's husband cashed a "whole binder" of checks at various check cashing locations around Kitsap County.[2] The investigation also discovered unauthorized automated teller machine (ATM) withdrawals using a company debit card. Eventually, Smith and her husband were arrested and tried separately. Smith's husband was tried first and received a "massive sentence."[3]

The State charged Smith with eight criminal counts: first degree identity theft and first degree theft for the unauthorized ATM withdrawals, first degree identify theft and first degree theft for the unauthorized checks, and four counts of forgery. Each charge included aggravating circumstances for abusing a position of trust and targeting a particularly vulnerable victim. The particularly vulnerable victim was Spaeth's owner, Bob Loidhamer, whom Smith knew was being treated for terminal melanoma. Loidhamer died before Smith or her husband were tried.

---

[2] Report of Proceedings (RP) (July 20, 2017) at 83.
[3] RP (July 17, 2017) at 51.

The morning of Smith's trial, she moved for a continuance to look into documents her attorney had not investigated. The court denied the motion because she failed to show good cause to grant the continuance.

A jury found Smith guilty of all eight charges and found aggravating circumstances for each charge. Because of the aggravating circumstances, the court imposed an exceptional sentence of 100 months for identity theft, 29 months for theft, and 18 months for forgery, all running concurrently. The court also imposed legal financial obligations.

Smith appeals.

## ANALYSIS

### Smith's Right To Present A Defense Was Not Harmed

Both the United States and Washington constitutions guarantee a defendant's right to present a complete defense by offering testimony and compelling the attendance of witnesses.[4] But "[t]hese rights are not absolute."[5] "The defendant's right to present a defense is subject to 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'"[6] Accordingly, we review the court's decision to exclude evidence for abuse of discretion.[7] A court abuses its

---

[4] State v. Lizarraga, 191 Wn. App. 530, 551, 364 P.3d 810 (2015).

[5] State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010).

[6] Lizarraga, 191 Wn. App. at 553 (quoting Chambers v. Mississippi, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)).

[7] State v. Franklin, 180 Wn.2d 371, 377 n.2, 325 P.3d 159 (2014).

discretion if its decision is based on untenable grounds or reasons, such as lacking a "lawful justification" for its ruling.[8]

Smith's case theory was that Loidhamer told her to write the checks she and her husband cashed as payment for working for Spaeth.[9]  Smith contends the court made three erroneous evidentiary rulings that prevented her from presenting this defense, thereby violating her constitutional rights.  Neither the law nor the record supports her arguments.

First, Smith argues the court vitiated "her entire defense" by ruling she could not testify Loidhamer gave her permission to write checks for herself and her husband.  But the specific rulings she challenges are narrow in scope.  Smith sought to testify that she wrote out checks to her husband "[b]ecause Bob would come to me and ask me to write out the checks."[10]  She also tried to explain she wrote checks to herself as overtime pay because "[Bob] told me to write those checks."[11]  The court excluded both statements as hearsay.

---

[8] State v. Garcia, 179 Wn.2d 828, 844, 318 P.3d 266 (2014).

[9] See, e.g., RP (July 24, 2017) at 363 (arguing at closing that "[t]he government wants to prosecute someone for going to work and doing what their boss told them to do.")

[10] RP (July 20, 2017) at 252.

[11] Id. at 258.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[12] Relevant testimony may be excluded if it is hearsay.[13] Smith proffered her testimony to prove the truth of her theory of the case: that Loidhamer gave her permission to write checks to herself and her husband. Smith's testimony was quintessential hearsay.

Smith contends that the statements were nonhearsay "verbal acts" whose "significance lay in the fact that the action was taken, not in the truth value of any statement itself."[14] An example of such a verbal act is a statement accepting an offer to form a contract. The statement itself establishes the action taken in forming a contract. But here, there is no dispute that "the action was taken" because Smith admitted she wrote the checks.[15] Instead, Smith sought to prove that "she had completed the [checks] with permission from Loidhamer."[16] This required proving the truth of Loidhamer's alleged statements that Smith had permission to write the checks. Consequently, Smith argued for her authority to write checks by testifying that Loidhamer signed them.[17] But the narrow rulings

---

[12] ER 801(c).

[13] Garcia, 179 Wn.2d at 276; ER 802.

[14] Appellant's Br. at 15.

[15] See, e.g., RP (July 20, 2017) at 247 ("I made [the checks] payable to, like an accounts payable person would do.").

[16] Appellant's Br. at 10.

[17] E.g., RP (July 20, 2017) at 246 ("I mean, Bob was signing checks . . . for a long time."); 258 ("Bob signed for every single one of those [checks]."); 271 ("[Those checks] were signed by the owner [of Spaeth].").

Smith challenges excluded only Loidhamer's statements that he directed Smith to write checks. This was not a "verbal act." The court properly excluded this testimony as hearsay.

Second, Smith contends the court erroneously prevented her from arguing that her husband worked for Spaeth because it excluded testimony in which she "did not attempt to testify to any out-of-court statement made by her husband."[18] But her testimony does not support her argument.

> Q: And so let's talk about [Smith's husband].
>
>  . . . .
>
> Q: What was [he] doing?
>
> A: [He] was driving for Bob also.
>
> Q: Okay. How do you know that?
>
>  . . . .
>
> Q: So what sort of things did you observe that led you to believe that [he] was driving a truck[?]
>
> A: [He] drove it—he wore a driver's shirt for Allied [Van Lines] and Spaeth.
>
> Q: Did he ever come into the office?
>
> A: Lots of times.
>
> Q: Lots of times? Six? Seven?
>
> A: He would come in almost every day.
>
> Q: Okay. And he would come to see [you], no?

---

[18] Appellant's Br. at 16.

A:     Not most of the time.  Most of the time, he would come into the office and walk past me and go right into Bob's office.

. . . .

Q:     So did you—you must have—I'm not asking you about the content and what was said because that gets into something that we can't present here.  *So did you ever have conversations with [your husband] about his work there?*

A:     Yes.

Q:     Okay.  And when you tried to talk to him, what would [his] reaction be?

A:     *He would say he's working for Bob.*

[Prosecutor]:  Objection, Your Honor.

[Defense counsel]:  *You can't say what he said.*

The court:  Again, sustained.  Jury, please disregard.

. . . .

Q:     So what other things did you observe about [your husband] that led you to believe that he worked there?

A:     That he came in all the time and spoke to Bob all the time.

Q:     Okay.

A:     And he wore their clothing.

. . . .

Q:     Did you ever make monies payable to [him]?

A:     I did—I did make—

Q:     When you were not supposed to?

A:     No. No, I did not.[19]

Contrary to Smith's contention, she testified about an out-of-court statement from her husband about "working for Bob" to prove the facts asserted in the statement itself.[20] The court properly excluded it as hearsay. And she was allowed to otherwise testify to her observations that her husband worked for Spaeth. Smith's argument on appeal is not supported by her trial testimony.

Third, Smith argues the court erred by excluding documents she created and by preventing her from testifying to their contents. The day before trial, Smith sent the State additional discovery documents purporting to be time cards she used to keep track of overtime she worked at home. Smith never asked the court to voir dire the documents nor did she move to admit them into evidence. On the State's motion, the court excluded the unauthenticated documents as hearsay. Two days later, Smith testified that she recorded and submitted the overtime she worked. The court struck Smith's testimony and prohibited her from testifying about recording or submitting overtime because her testimony relied on unauthenticated hearsay. However, she was able to testify generally about working overtime.[21]

---

[19] RP (July 20, 2017) at 252-55, 257 (emphasis added).

[20] ER 801(c).

[21] E.g., RP (July 20, 2017) at 267-68 (testifying "I did overtime," "I was taking home work almost every day," and "I was [appropriately paid for my overtime].").

Smith contends her testimony should have been sufficient to authenticate her overtime records under ER 901. But Smith never provided the records to the court, so it never had the opportunity to compare them to her testimony and make a finding about their authenticity.

Smith also argues the court should have allowed her testimony anyway because "[t]here is no rule of evidence prohibiting testimony which alludes to the existence of an inadmissible exhibit."[22] She is mistaken. ER 1001-08, commonly known as the "best evidence rule," applies when a party is attempting to prove the contents of a writing.[23] The rule typically requires the use of an original or duplicate writing to prove the writing's contents.[24] Because Smith's counsel was "asking her to testify about the records" and their contents,[25] the best evidence rule required the records themselves unless an exception applied.[26]

Because the constitutional right to present a defense is limited by the rules of evidence[27] and Smith fails to show the court abused its discretion when enforcing the rules, the court properly restricted Smith's testimony and did not harm her constitutional rights.

---

[22] Appellant's Br. at 19.

[23] In re Pers. Restraint of Adolph, 170 Wn.2d 556, 567, 243 P.3d 540 (2010).

[24] Id. (citing ER 1002-03).

[25] RP (July 20, 2017) at 261.

[26] ER 1002, 1004.

[27] Lizarraga, 191 Wn. App. at 553.

Smith Received Effective Assistance Of Counsel

Smith argues her counsel was deficient because, first, he did not conduct an adequate investigation, and second, he did not object at sentencing to how the court calculated her offender score. We review claims of ineffective assistance of counsel de novo.[28]

To prove she received ineffective assistance of counsel, a defendant must prove (1) that her counsel's performance was deficient and (2) caused her prejudice.[29] We presume that a defense counsel's representation was not deficient unless the defendant shows "'no conceivable legitimate tactic explain[s] counsel's performance.'"[30] "Prejudice exists if there is a reasonable probability that 'but for counsel's deficient performance, the outcome of the proceedings would have been different.'"[31] A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome."[32]

First, Smith argues her trial counsel failed to provide effective assistance because he overlooked and did not investigate records purportedly documenting

---

[28] State v. Lopez, 190 Wn.2d 104, 117, 410 P.3d 1117 (2018).

[29] Id. at 109.

[30] State v. Fedoruk, 184 Wn. App. 866, 880, 339 P.3d 233 (2014) (alteration in original) (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

[31] Lopez, 190 Wn.2d at 116 (quoting State v. Estes, 188 Wn.2d 450, 458, 295 P.3d 1045 (2017).

[32] Id. (quoting Estes, 188 Wn.2d at 458).

her husband's work for Spaeth until shortly before trial. Even assuming that Smith's counsel's conducted an inadequate investigation, she does not demonstrate any resulting prejudice. The documents at issue were purported to be Smith's husband's records of his time working for Spaeth as a truck driver, which Smith wanted to use to bolster her case theory. But Smith presented this part of her theory without the documents. And the State effectively undercut her with uncontested evidence from the Washington Department of Licensing that showed Smith's husband did not have a commercial driver's license, which Spaeth required its drivers to have. Because these facts do not create a reasonable probability that the outcome of trial would have been different had Smith's counsel investigated the documents, Smith fails to show she received ineffective assistance of counsel.

Second, Smith argues her trial counsel provided deficient representation by failing to object or otherwise argue at sentencing that her convictions for first degree identity theft and first degree theft constitute the same criminal conduct for sentencing purposes.[33] But other than her conclusory assertion that first degree identity theft and theft are the same criminal conduct, Smith does not address the

---

[33] Smith separately suggests her case be remanded for resentencing because, apart from any ineffective assistance, the trial court miscalculated her offender score by not treating first degree identity theft and first degree theft as the same criminal conduct. But Smith acknowledges that her counsel did not object or otherwise raise this at trial. Accordingly, she waived it as a separately appealable issue. State v. Phuong, 174 Wn. App. 494, 547, 299 P.3d 37 (2013).

criminal intent and time and place requirements to prove same criminal conduct.[34] Even if she had explained, she does not argue her counsel's performance caused her any prejudice. Accordingly, Smith does not carry her burden of showing her counsel's performance at sentencing was deficient.

The State's Charging Document Was Adequate

Smith requests that we reverse her conviction and dismiss the charges against her without prejudice because the second amended information did not provide adequate notice of the charges against her. Specifically, she contends the information was inadequate because it did not identify who she allegedly stole from or what she allegedly stole.[35]

We review de novo whether a charging document is constitutionally adequate.[36] Where, as here, the defendant challenges the adequacy of a charging document for the first time on appeal and, as here, she does not allege prejudice, we liberally construe the charging document to determine if there is any fair construction by which the essential elements are all contained within it.[37]

---

[34] See RCW 9.94A.589(1)(a) ("'Same criminal conduct,' . . . means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim.")

[35] Smith does not challenge the adequacy of the two counts of identity theft or the four counts of forgery in the second amended information.

[36] State v. Goss, 186 Wn.2d 372, 376, 378 P.3d 154 (2016).

[37] Id.; State v. Kjorsvik, 117 Wn.2d 93, 105, 812 P.2d 86 (1991).

The identity of the property owner is not an element of crimes involving larceny or theft,[38] and an information alleging theft is not constitutionally inadequate where it fails to name the victim.[39] Although the "clearest and easiest way to protect the accused against a second prosecution for the same crime, and to avoid misleading or embarrassing the accused in the preparation of his or her defense, would be to name the owner of the allegedly embezzled property or the victim of the alleged theft by putting in the information," this fact is not required.[40] Because Washington does not require naming the victim of theft in a charging document, the second amended information was not inadequate for failing to name Spaeth.[41]

Smith also faults the charging document for "not provid[ing] any allegations regarding the nature or character of the property or services" she allegedly stole.[42] The second amended information charges Smith with two counts of first degree theft. Chapter 9A.56 RCW defines "first degree theft" as "wrongfully obtain[ing] or exert[ing] unauthorized control over the property or services of another or the

---

[38] State v. McReynolds, 117 Wn. App. 309, 335-36, 71 P.3d 663 (2003).

[39] State v. Greathouse, 113 Wn. App. 889, 904-05, 56 P.3d 569 (2002) (quoting State v. Easton, 69 Wn.2d 965, 967, 422 P.2d 7 (1966) ("It is not necessary under our code or under any system of pleading to allege in the indictment for larceny in whose possession the property is, but it is sufficient to allege and prove that the property stolen was the property of another.") (internal quotation marks omitted)).

[40] Id.

[41] We note that both the original information and first amended information named Spaeth Transfer as the owner of the allegedly stolen property.

[42] Appellant's Br. at 26-27 (internal quotation marks omitted).

value thereof, with intent to deprive him or her of such"[43] "[p]roperty or services which exceed(s) five thousand dollars in value other than a firearm."[44] The statute also contains specific provisions for theft of a search and rescue dog and certain types of "metal property."[45] Because the State was not charging Smith with stealing any of the specific property listed in the statute and we liberally construe the information, the exact nature or character of the allegedly stolen property is not required to the inform Smith of the charge against her.[46]

Smith does not allege any other defects with the charging document. Because neither the identity of a theft victim nor the exact nature of the stolen property were needed to adequately inform Smith of the charges against her, the second amended information was not constitutionally inadequate.

---

[43] RCW 9A.56.020(1)(a).

[44] RCW 9A.56.030(1)(a).

[45] RCW 9A.56.030(1)(b)-(d).

[46] See State v. Tresenriter, 101 Wn. App. 486, 495, 4 P.3d 145 (2000) (the description of stolen property and the location of stolen property are not essential elements of a possession of stolen property charge required in a charging document.)

Smith analogizes to a foreign case, Valentine v. Konteh, 395 F.3d 626 (6th Cir. 2005), for support. But Valentine is readily distinguishable because the charging document in that case made "carbon-copy" allegations that were "identically worded," including the dates of the different offenses alleged. Id. at 628-29. Here, each of the two theft charges are differentiated by their distinct date ranges.

Erroneous Imposition of Legal Financial Obligations

As part of Smith's sentence, the court imposed a $200 filing fee and a $100 DNA testing fee. The State concedes those fees should be stricken. We accept the concession. As in State v. Ramirez,[47] a resentencing hearing is unnecessary.

## CONCLUSION

Therefore, we affirm in part, reverse in part, and remand for the trial court to strike the DNA fee and the filing fee.

WE CONCUR:

---

[47] 191 Wn.2d 732, 750, 426 P.3d 714 (2018).