IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37311-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| BRYAN LEE WING, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Bryan Wing challenges his conviction for second degree malicious

mischief. He also challenges the sentencing court's calculation of his offender score and

the court's denial of a drug offender sentencing alternative (DOSA) sentence. We vacate

his conviction for second degree malicious mischief because the State failed to show

damages exceeding $750. We direct the trial court to enter judgment of conviction for

third degree malicious mischief. We also remand for resentencing.

FACTS

At some unidentified time on or before October 22, 2019, someone violently

entered Mindy Halme's rural Lincoln County home, while still in construction. The

burglar stole a miter saw. The State prosecuted Bryan Wing for the crimes.

On October 22, 2019, Mindy Halme visited her new home's construction site and discovered that someone entered the house by damaging the front door. Halme had purchased the front door two weeks earlier for $1057.33. The door jamb lay in pieces, and the door suffered scratches and a dent. The door would not close as a result of the harm.

On entering the home, Mindy Halme discovered missing a DeWalt compound miter saw purchased that same week. On the floor near the saw's stand, she found a blue PayPal debit card displaying the name "Bryan Wing." Report of Proceedings (RP) at 11-12. Halme knew of no person named Bryan Wing. Halme contacted the Lincoln County Sheriff's Department, and Deputy Jerad McLagan responded. Deputy McLagan observed a footprint on the door, where the burglar forcefully kicked the door, and he saw a matching footprint inside the home near the missing saw's stand. The tread marks did not match the shoes of the contractor at the construction site. McLagan also ascertained, through conversations with contractors, that the workers did not know Bryan Wing.

Lincoln County Sheriff Deputy Jerad McLagan knew Bryan Wing through a shared family relationship. Deputy McLagan obtained a search warrant for Wing's home and vehicle. McLagan journeyed to Wing's residence to execute the warrant and observed Wing's vehicle approaching. Once the vehicle stopped, McLagan placed Wing in handcuffs and advised him that he had a search warrant.

Deputy Jerad McLagan conducted a visual search of Bryan Wing's vehicle and saw therein sawdust. He also observed that the tread pattern on Wing's shoes matched that of the prints found on the broken front door and in Halme's home. In the trunk of Wing's car, McLagan located a DeWalt compound miter saw matching Halme's description of her saw. Deputy McLagan took the saw to Mindy Halme, who identified the tool as the one stolen from her home.

PROCEDURE

The State of Washington charged Bryan Wing with second degree burglary for entering the home, second degree malicious mischief for damage to the front door, and third degree theft for purloining the miter saw.

During trial, Mindy Halme testified that she mended the pieces of the door jamb in order to lock their house. The couple also stained the damaged door, although the texture still retained scratches. Halme testified that she hoped to replace the door. The State inquired:

> Q  Would there be a way to, I guess, restore the door to new condition without replacing it?
> A  No. The—jamb is completely split apart, and the door itself—scratch[ed]. We tried to get the scratches out and we could not.

RP at 14. The trial court admitted as an exhibit an invoice showing that Halme paid $1,057.33 for the door weeks before the burglary.

3

During cross-examination, Mindy Halme explained that her fix of the front door was temporary rather than permanent. Defense counsel inquired as to the cost to repair the door:

> Q In regards to the door, I believe you testified that the door jamb was broke?
> A Yes.
> Q And how much do you think it will cost you to fix the door jamb, or how much did it cost you to fix the door jamb.
> A We just fixed it ourselves for right now. It's not permanently fixed. We just made it work.
> Q So you didn't hire anybody to fix the door jamb?
> A Not yet.
> Q And the—you also testified that there was damage to the door. Is the door broken?
> A No; it was scratched.
> Q The door is scratched?
> But you're still using the door right now, correct?
> A Correct.
> Q And does it work?
> A Yes.
> Q So the door itself was not broken.
> A No.

RP at 16-17. Defense counsel recapped Mindy Halmes' testimony as follows:

> Q And so, in regards to specifically the door, from what I can hear is, the door is not broken but the jamb is broken and there's some scratches on the door, but everything else works.
> A Correct.

RP at 19.

On redirect, the State inquired from Mindy Halme:

> Q So, Ms. Halme, you testified that the—the door's not broken. But was it damaged?

A  Correct.
Q  And were you able to, I guess, erase the damage and bring it back to new condition.
A  Not all of it.
Q  Okay.

RP at 19.

At trial, the trial court instructed the jury that the State must prove damages to property exceeding $750 to convict the accused of the crime of second degree malicious mischief.  The State's attorney, in closing argument, remarked:

> Now the next part is in an amount exceeding $750.  Now as I mentioned, we have that invoice—It's Exhibit No. 1 and you'll get to look at that.  The amount that they paid for that—for that door was $1,057.  So, obviously that's more than $750, so that portion of this element has been met.

RP at 113-14.

The jury convicted Bryan Wing of all three charges: second degree burglary, second degree malicious mischief, and third degree theft.

Brian Wing garnered eighteen prior convictions.  During sentencing, Wing argued that three convictions for theft of credit access devices and five convictions for identity theft, all which occurred on July 18, 2014, should be considered as the same criminal conduct and only count as one conviction for his offender score.  Under Wing's theory, his total offender score would be 10.

In response, the State filed a probable cause report filed with the criminal information for the eight theft convictions arising from conduct on July 18, 2014.  The

convictions stemmed from the theft of three credit cards from one wallet from a single victim and the subsequent use of the credit cards at five different stores at five different locations. Wing entered a guilty plea for three counts of second degree theft of an access device and five counts of second degree identity theft for the use of the various cards.

During sentencing, the State and Bryan Wing agreed that the three counts of second degree theft of access devices should be counted as the same criminal conduct as those charges stemmed from the theft of credit cards from the same victim and occurred simultaneously. The State disagreed that the identity thefts convictions should be scored as one together and one with the theft of the credit cards. Under the State's theory, Bryan Wing's score would be 17.

In its oral ruling, the sentencing court accepted the State's argument that each of the five identity thefts should be considered a separate offense. The court reasoned that the use of the credit cards involved separate locations and separate victims, the store operators. The sentencing court calculated Bryan Wing's offender score at 17.

During sentencing, Bryan Wing requested a DOSA sentence. He also apologized to Mindy Halme. At the beginning of his allocution, Wing commented:

> I know that through the trial it literally came across that I was trying to blame Off[icer] McLagan as well as my family members and that they set me up, which by all means I did not want to come across that way, or portray.

RP at 148.

6

The sentencing court expressed concern about granting Bryan Wing a DOSA sentence because he had twice received DOSA sentences, and the court concluded that those sentences did not reform Wing's conduct. The court also observed that the pending crimes did not relate to drugs. The court concluded, "So to suggest I'm going to give him a third time is just—that's not just realistic, here." RP at 157.

The sentencing court added other reasons for denying the DOSA sentencing alternative:

> And frankly, if a person wants a—DOSA, think they'd have asked for a stipulated facts trial. He could have pled and requested it. But to say he never denied guilt, I'm going to say that's not true, because he pled not guilty at—at arraignment, he pled—he had a not guilty plea until the jury found him guilty. So we had to spend thousands of dollars for this individual, who said he'd never (inaudible)—never denied it, but in fact he admitted it on the phone, he admitted it where he indicated to the officer that, yes, the only item in the trunk was the item in the search warrant— which wasn't brought up in trial, but—that was—that was also a statement made.
> So, we—we did go through a lot of trouble when you could have gone around it and—and sought the issue. Whether I grant it or not is not something that's—you know, before me now, because it wasn't requested. And again, when you see these numerous charges, it is more likely that I'm going to be skeptical of—of an individual who twice had an opportunity and twice failed to comply, or—comply and then just failed to adhere to the —lack of use of drugs.
> So, we have—numerous property violations, numerous victims, here. And so, I'm looking at 17 is the correct number. DOSA is not something that is going to happen after a jury trial with the obvious—it was property, it wasn't an individual who was caught with drugs in his possession and—we're dealing with—victims out there, whether or not it's based upon addiction to drugs and seeking money for drugs. The bottom line is he—here we are, the victims exist, they are real, and the drug addiction is possibly likely, but we have numerous properties to—he's

7

competent enough to go around to do what he did, and—and so we have the theft—there wasn't—there was no drugs on him at the time.
So I'm not even sure this is associated with the drugs.

RP at 157-58.

The sentencing court also commented on the effect of the trial on Mindy Halme:

I hope—sincere about the (inaudible), but, you know, he may be—sincere about the apology,—we had a trial. She had to testify. So I question that. I don't—I don't think there's much sincerity in saying he didn't do it when—when there's no evidence to suggest you didn't do it, and poor Ms. Iverson, you had—you had no—you had no defense, frankly. You had—(inaudible) the trial, but a continuance would have given you no—no additional information because his statements, and his—The fact is he had the item the same day that the item was taken, and he had it on him, and—the search warrant was proper, we had prior hearings. All these things we knew before going into court. So,—continuance wouldn't have given nothing more than just—delay the inconvenience, additional efforts of the witnesses to testify.

RP at 160.

The trial court denied a DOSA sentence. The sentencing court imposed an exceptional sentence based on Bryan Wing's high offender score and imposed consecutive sentences totaling 97 months.

LAW AND ANALYSIS

On appeal, Bryan Wing challenges his conviction for second degree malicious mischief and his sentence. He contends the State's evidence did not support a conviction for second degree malicious mischief. He asserts that the sentencing court incorrectly

calculated his offender score and the sentencing court denied a DOSA sentence for impermissible reasons.

Second Degree Malicious Mischief Conviction

Bryan Wing contends that the State failed to show that he caused physical damage exceeding $750 to Mindy Halme's door. Wing emphasizes that the State only proved the replacement value for the door and that the replacement value is not an appropriate assessment of damages unless the door lacks any market value. The State responds that the evidence at trial showed the value of the door exceeded $750, and, therefore, sufficient evidence supports the conviction.

Evidence suffices to support a conviction if, viewed in the light most favorable to the prosecution, the evidence permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). A claim of insufficiency admits the truth of the State's evidence and all inferences reasonably drawn therefrom. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A "mere scintilla of evidence" does not support a conviction. *State v. Fateley*, 18 Wn. App. 99, 102, 566 P.2d 959 (1977). Instead, the State must present substantial evidence, i.e., that quantum of evidence necessary to establish circumstances from which the jury could reasonably infer the fact to be proved. *State v. Fateley*, 18 Wn. App. 99, 102. Substantial evidence is evidence which would convince an

unprejudiced, thinking mind of the truth of the fact to which the evidence is directed. *Arnold v. Sanstol*, 43 Wn.2d 94, 98, 260 P.2d 327 (1953).

Evidence may be direct or circumstantial. When the State relies on circumstantial evidence, reasonable inferences must establish the fact to be proved. *Arnold v. Sanstol*, 43 Wn.2d 94, 99.

A person commits the crime of second degree malicious mischief if:

> he or she knowingly and maliciously: . . . [c]auses *physical damage* to the property of another in an amount exceeding seven hundred fifty dollars[.]

RCW 9A.48.080(1)(a) (emphasis added). RCW 9A.48.010(1)(b) defines "damages" as follows:

> "Damages", in addition to its ordinary meaning, includes any charring, scorching, burning, or breaking, or agricultural or industrial sabotage, and shall include any *diminution in the value* of any property as a consequence of an act.

(Emphasis added.) The ordinary meaning of "damages" under RCW 94A.48.100 includes the reasonable cost of repairs to restore injured property to its former condition. *State v. Newcomb*, 160 Wn. App. 184, 192, 246 P.3d 1286 (2011).

Both parties focus on the meaning of the term value. The term "value" is not specifically defined with regard to malicious mischief. In the context of the crime of theft, the word means "the market value of the property or services at the time and in the approximate area of the criminal act." RCW 9A.56.010(21); *State v. Longshore*, 141

10

Wn.2d 414, 429, 5 P.3d 1256 (2000). "Market value" means "the price which a well-informed buyer would pay to a well-informed seller, where neither is obliged to enter into the transaction." *State v. Clark*, 13 Wn. App. 782, 787, 537 P.2d 820 (1975).

The State focuses exclusively on the value of the door. It ignores a critical difference in the use of the term "value" in a theft case as opposed to a malicious mischief case. Theft, of any degree, focuses solely on the value of the item purloined. RCW 9A.56.030, .040, .050. On the other hand, malicious mischief requires the State to prove physical damage to the property of another. Damage consists of the reasonable cost of repair to an item or its diminution in value. RCW 9A.48.010(1)(b); *State v. Newcomb*, 160 Wn. App. 184, 192 (2011).

The State presented evidence that, on October 7, 2019, Mindy Halme paid $1,057.33 for her front door. The State alleged that, less than two weeks later, Bryan Wing damaged the door by opening it with a kick. The State's evidence merely establishes that the door possessed a value of $1,057.33 at the time of the kick.

The State needed to establish by sufficient evidence that, as a result of Bryan Wing's kick, the door sustained damage of more than $750, not whether the door's value exceeded $750. Mindy Halme testified that the break-in resulted in a broken door jamb and a scratched door. As a temporary fix, she reconstructed the door jamb in order to lock her home. On cross-examination, Halme acknowledged that she has not yet hired anyone to fix the door, the door is not broken, and she currently uses the door. Thus, the

11

door was not a total loss.  The record includes no estimate of repair costs or diminution of value.  Stated differently, the State presented no estimate of damages for purposes of malicious mischief conviction, let alone damages exceeding $750.

Because the State failed to present proof of damage equal to or exceeding the minimum amount needed for a second degree malicious mischief conviction, we vacate the judgment and sentence for the crime.  The evidence provided at trial supports entry of judgment for the lesser crime of malicious mischief in the third degree as proof of the crime does not require a showing of any particular sum of damages.  RCW 9A.48.090.  We remand for entry of judgment and resentencing on the lesser crime of malicious mischief in the third degree.  *State v. Atterton*, 81 Wn. App. 470, 473, 915 P.2d 535 (1996).

Offender Score

Bryan Wing argues that the trial court erred by refusing to count Wing's five second degree identity theft convictions and three second degree theft of access devices convictions, for conduct on July 18, 2014, as a single point toward his offender score.  He argues that the trial court erred by concluding that the five identity theft convictions did not constitute the same criminal conduct and did not constitute the same criminal conduct as the three thefts of access devices.  The State responds that, for each charge of second degree identity theft, Wing perpetrated thefts against a different victim, at different times,

12

and often with different stolen credit cards. Therefore, according to the State, each conviction for identity theft constitutes a score of one against Wing's offender score.

Illegal or erroneous sentences may be challenged for the first time on appeal. *State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d 452 (1999). A court that imposes a miscalculated offender score acts without statutory authority. *In re Personal Restraint of Goodwin*, 146 Wn.2d 861, 868, 50 P.3d 618 (2002). When a sentencing court incorrectly calculates the standard range before imposing an exceptional sentence, remand is the remedy unless the record clearly indicates the sentencing court would have imposed the same sentence anyway. *In re Personal Restraint of Rowland*, 149 Wn. App. 496, 508, 204 P.3d 953 (2009).

A sentencing court applies the "same criminal conduct" analysis found in RCW 9.94A.589(1)(a) when determining whether to count past offenses as one or separate offenses. RCW 9.94A.525(5)(i). If the court finds that more than one conviction should be counted as one offense, then the offense that yields the highest offender score shall be used. RCW 9.94A.525(5)(i). A trial court's determination of what constitutes the same criminal conduct for purposes of calculating an offender score will not be reversed absent an abuse of discretion or misapplication of the law. *State v. Walden*, 69 Wn. App. 183, 188, 847 P.2d 956 (1993).

For multiple crimes to be treated as the "'same criminal conduct'" at sentencing, the crimes must have (1) been committed at the same time and place, (2) involved the

same victim, and (3) involved the same objective criminal intent. *State v. Tili*, 139

Wn.2d 107, 123, 985 P.2d 365 (1999); RCW 9.94A.589(1)(a). If any one of these

elements is missing, the offenses must be counted separately in calculating the offender

score. *State v. Calvert*, 79 Wn. App. 569, 577, 903 P.2d 1003 (1995). Separate incidents

may satisfy the same time element of the test when they occur as part of a continuous

transaction or in a single, uninterrupted criminal episode over a short period of time.

*State v. Young*, 97 Wn. App. 235, 240, 984 P.2d 1050 (1999).

We agree with the sentencing court that Bryan Wing's five instances of identity

theft do not constitute the same criminal conduct because Wing fails to show that the use

of the credit cards occurred at the same time and place. Also, the use of the credit cards

occurred after the theft of the wallet and at a different location. Although the crimes

occurred on the same day, Wing presents no evidence that a succeeding theft occurred

shortly after the preceding theft. Even if we assumed that Wing satisfied the time

element of same criminal conduct, the place of the crimes is not the same. Wing stole the

wallet and then went to five separate stores and used the credit cards. He does not

address this element in his briefing, and no evidence satisfies this element.

### DOSA Sentence

Finally, Bryan Wing assigns error to the sentencing court's denying him a DOSA

sentence purportedly as a penalty for exercising his constitutional right to a jury trial.

Wing argues that the court's comments when announcing his sentence chills a

14

defendant's right to a jury trial. The State responds that the trial court's comments were not in response to Wing's decision to stand trial, but rather Wing's comment that he had never denied guilt.

The decision to deny a DOSA sentence is within the trial court's discretion. *State v. Grayson*, 154 Wn.2d 333, 338, 111 P.3d 1183 (2005). Ordinarily, a DOSA, as an alternate form of a standard range sentence, may not be appealed. *State v. Gronnert*, 122 Wn. App. 214, 225, 93 P.3d 200 (2004). A defendant, however, is not precluded from alleging a constitutional violation on the part of the sentencing court. *State v. Gronnert*, 122 Wn. App. 214, 225.

To punish a person because he has done what the law plainly allows him to do is a due process violation. *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978). Adding punitive measures when a defendant chooses to exercise his right to trial by jury calls into question the validity of the sentence as the exercise of the constitutional right to trial by jury should have no bearing on his or her sentence. *United States v. Marzette*, 485 F.2d 207, 207 (8th Cir. 1973). A defendant's plea of not guilty cannot be used against him or her during any stage of the proceedings because due process guarantees an individual the right to maintain innocence even when faced with evidence of overwhelming guilt. *Holton v. State*, 573 So.2d 284, 292 (1990).

In *United States v. Stockwell*, 472 F.2d 1186, 1187 (9th Cir. 1973), the ninth circuit remanded a case for resentencing after stating, "we do not believe that the

15

experienced trial judge actually punished the defendant for standing trial, [however] the record leaves unrebutted the inference drawn by the defendant."

In *In re Lewallen*, 23 Cal. 3d 274, 280, 590 P.2d 383, 152 Cal. Rptr. 528 (1979), the trial court commented: as "far as I'm concerned, if a defendant wants a jury trial and he's convicted, he's not going to be penalized with that, but on the other hand he's not going to have the consideration he would have had if there was a plea." (Internal quotation marks omitted.) The Supreme Court of California observed that the trial court first noted the rights of the defendant and then proceeded to qualify them. The court rejected the State's argument that the judge's remarks were ambiguous. The state high court commented:

> We conclude that when the judge's statements are viewed as a whole, there can be no rational interpretation other than that he was basing petitioner's sentence at least in part on the fact that he declined the prosecution's plea bargain and demanded a trial by jury.

*In re Lewallen*, 23 Cal. 3d at 280.

In numerous other foreign state decisions, the reviewing court remanded for resentencing when the sentencing court commented during sentencing about the accused's failure to plead guilty. *Commonwealth v. Bethea*, 474 Pa. 571, 379 A.2d 102, 106 (1977); *Johnson v. State*, 274 Md. 536, 543, 336 A.2d 113 (1975); *State v. Knaak*, 396 N.W.2d 684, 687 (Minn. 1986).

In response to Bryan Wing's allocution, the sentencing court commented the government needed to spend thousands of dollars and the victim needed to undergo the trauma of testifying during a trial because Wing denied guilt. The court remarked that, if an accused seeks a DOSA sentence, he or she should plead guilty or ask for a stipulated facts trial.

At the beginning of its ruling, the sentencing court denied Bryan Wing a DOSA sentence based on permissible factors. Nevertheless, the court later added impermissible factors that tainted the denial of the sentence. This court is remanding for resentencing based on lowering the conviction for malicious mischief from second degree to third degree. During resentencing, the court should again consider a DOSA sentence without influence of Bryan Wing's insistence of a jury trial.

## CONCLUSION

We reverse Bryan Wing's conviction for second degree malicious mischief and remand for entry of judgment for third degree malicious mischief. We affirm the sentencing court's calculation of the offender score. We remand for resentencing based on the lowering of the conviction from second degree to third degree malicious mischief. On remand, the sentencing court should again review whether to grant Bryan Wing a DOSA sentence.

No. 37311-8-III
*State v. Wing*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:


_____
Siddoway, A.C.J.

_____
Lawrence-Berrey, J.

18